Robert Earl COOPER, Appellant,

v.

COMMONWEALTH of Kentucky,
Appellee.

Supreme Court of Kentucky.

July 3, 1978.

Rehearing Denied Aug. 22, 1978.

Jack Emory Farley, Public Defender, William M. Radigan, Asst. Public Defender, Frankfort, for appellant.

Robert F. Stephens, Atty. Gen., James L. Dickinson, Asst. Atty. Gen., Frankfort, for appellee.

JONES, Justice.

Robert Earl Cooper appeals from judgments of conviction imposing a prison term of 50 years on a charge of first-degree rape, and a sentence of 5 years for second-degree robbery in conformity with a jury's verdict. KRS 510.040(1)(a) and KRS 515.030(1)(a). The trial court directed that the sentences be served concurrently. Not satisfied with the result Cooper prosecutes this appeal.

There are other questions, but the principal issues presented for decision are: (1) whether the trial court erred by overruling Cooper's motion for directed verdict on the charge of first-degree rape, and, (2) whether the trial court erred by refusing Cooper's requested instruction on attempted rape in the first degree.

The victim, Allie Williams, 74 years of age, testified that about 10 A.M. on August 16, 1977, she was on her back porch washing clothes. A man, later identified as Cooper, approached her home and explained that he was looking for a Mr. Henson who was

supposed to live in the area. With Mrs. Williams' permission, the man used her telephone. Suddenly, he came out of her house, grabbed her by the arms, and dragged her into the living room. Once inside, the man began choking her. He took her by the hand and asked for her money. She gave him $13.00—all she had. At that point, Mrs. Williams blacked out and had no memory of what took place until she awakened in the hospital. She had bruises on her arms, legs, neck, chin, and face. She was injured in her private parts.

On August 22, 1977, the investigating officers were told by a neighbor of Mrs. Williams that a man fitting the description of Cooper was in the vicinity where she lived, and that he was driving a white car with a black top in the direction of Mrs. Williams' house. Based on that information the officers went to Cooper's home and requested that he accompany them to the courthouse. There they explained his rights under *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). After talking briefly with his brother Michael, Cooper told the officers that he raped and robbed Mrs. Williams. His oral statement was reduced to writing and subscribed and sworn to before the County Judge Pro Tem of Marshall County. The pertinent portion of Cooper's confession is as follows:

". . . I went to the next house and parked on a bridge and went to the front door and knocked. No one answered and I went to the back door and she [Mrs. Williams] was hanging up clothes and I asked to use her phone. I used her phone and went back out and started talking to her about Ralph Henson . . . she told me she never went anywhere but church and cemetery. I asked her about her husband and she said she didn't have a husband. I started talking and then took her by the arm and took her into the house. I then raped her . . . I took the $10.00 and left . . . there was $2.00 in the back of her billfold. I took that also . . . when I raped her I had my hands around her neck and was choking her. I took off her panties and raped her. When I left her she was on the bed."

Cooper, who was 18 years old at the time it was alleged that he robbed and raped Mrs. Williams, testified in his own behalf. His testimony was fairly consistent with the confession made to the officers. Although Cooper had confessed to the rape and robbery of Mrs. Williams when questioned by the officers, at trial he repudiated a part of the confession. He maintained that Mrs. Williams made what he construed to be a sexual advance. However, the crux of his testimony at trial established that he robbed and raped Mrs. Williams, and that he choked her. He testified that she discussed religion with him, put her hand on his leg, and that he put his hand on hers. He described the incident in this fashion:

". . . First she put her hand on my leg again and I put my hand on hers and that's when I kissed her . . . and that's when I put my hand on her shoulder and she pulled my hand around to this side and that's when she laid back on the bed . . . and she didn't offer no resistance . . . and . . . we laid there for a minute or two and I got up on top of her . . . when I rolled on top of her and I kissed her and reached down and pulled up her dress . . . I got back up on top of her and then I reached my hand down there to the private part of her body and that's when she started kicking . . . and sort of raised about half way up like . . I don't know, but she acted like she went crazy; and that's when I put my hand on her throat and pushed her back on the bed and was holding her; and I got about half way off; and she brought her hands about half way towards my face; and I pushed her back and I still had my hand on her throat; and I just pushed her back and myself up away from her. . . ."

Cooper testified that when he left Mrs. Williams' home she acted like she was "in shock or something. She was just swinging freely in the air and kicking and stuff." Although Cooper was 18 years of age at the time and had completed the 8th grade, he told the jury that he thought the term

"rape" meant "any time you do something to a woman without her will, as far as involving her private parts of her body." Cooper also admitted that when he rolled back on top of Mrs. Williams he unzipped his pants. He testified: "I just laid on top of her and sort of like kissed her again; and then I reached down . . . and she started kicking and struggling." Today's society is sex oriented to the point of saturation. Television, X and R rated movies, the news media and magazines have made it so. For a healthy, normal 18-year-old man to assert that he didn't know what the term "rape" means borders on the fringe of absurdity.

Cooper strenuously argues that the evidence presented at trial was insufficient to warrant submitting to the jury the issue of whether Mrs. Williams in the course of being raped sustained a serious physical injury. He bases that argument on the testimony of Dr. Hugh Houston, her family physician. Thus, it is necessary for the court to review pertinent portions of Dr. Houston's testimony.

Mrs. Williams had been a patient of Dr. Houston for several years. He was familiar with her general physical condition prior to August 16, 1977. He examined her at the Murray Hospital at 2:00 P.M. on that date. Dr. Houston testified that Mrs. Williams' physical condition prior to August 16 was "poor, mainly because of a coronary pulmonary condition." He testified also that she had bronchitis, for which she took medication and that she "takes bouts of antibiotics for her infection." When Dr. Houston examined Mrs. Williams he found her to be in *"mental shock, agitated, could not speak or would not speak, and was withdrawn like some frightened animal."* (Emphasis added). Because of her mental shock Dr. Houston waited two hours before he completed his examination. His examination revealed that Mrs. Williams had pressure areas on her throat, "which to me meant she had been choked. Then she had bruises on the joint of her elbow and on her body. She had a large bruised area on the anterior symphysismons veneria. She had bruises around her vagina and bleeding around her

vagina. . . . ." Dr. Houston also testified that Mrs. Williams had lacerations in the posterior part of the vagina just beyond the vestibule. The doctor determined from the trauma and the bleeding that Mrs. Williams had been sexually molested. On being questioned about whether there was evidence of penetration, the doctor's answer was in the affirmative. He said, "I think there had been penetration." Being pressed on that point the doctor testified, "I think the bruises and the tear of her vagina is evidence enough she was sexually molested and I think there was penetration in the vagina." The doctor was asked if the injuries Mrs. Williams received created a substantial risk of death. His response was, "She's a 74-year-old woman with heart trouble and chronic lung disease . . . I don't they (sic) they would cause death but I think *her fear was a pretty nice risk.*" (Emphasis added). On being asked if he considered the injuries to create a substantial risk of death, he said, "No, I think the risk of death was more just from fear than it was from any bruises. *The woman was scared to death.*" (Emphasis added).

At the conclusion of all of the evidence for the Commonwealth, Cooper's lawyer moved for a directed verdict. He did not, however, move for a directed verdict at the conclusion of all the evidence. On a number of occasions this court has held that a motion for a directed verdict made at the close of the Commonwealth's case is not sufficient to preserve error unless renewed at the close of all of the evidence. However, this court has held that the appropriate procedure to preserve a matter for review is for the appellant, at the close of all of the evidence and before the instructions are given, to object to the giving of instructions or to tender a proper instruction supporting his theory of the case. See *Kimbrough v. Commonwealth*, Ky., 550 S.W.2d 525 (1977). At the close of all of the evidence Cooper's trial lawyer objected to the trial court's instruction on first-degree rape, on the ground there was no testimony that Mrs. Williams had received a serious physical injury as defined by KRS 500.080(15).

Cooper's lawyer also requested an instruction on attempted rape in the first degree, although there is nothing in the record to indicate that he tendered such an instruction. Thus, these alleged errors were preserved for review.

■ As to the count of first-degree rape, the trial court instructed the jury on serious physical injury, first-degree sexual abuse, and reasonable doubt. He also gave the jury definitions of sexual intercourse, sexual contact, forcible compulsion, and serious physical injury. The trial court defined "serious physical injury" as "physical injury which creates a *substantial risk of death,* (Emphasis added), prolonged disfigurement, prolonged impairment of health, or prolonged loss or impairment of the function of any bodily organ." That is the verbatim definition contained in KRS 500.080(15).

This court is of the opinion that the physical injuries inflicted upon Mrs. Williams during the course of the rape created a substantial risk of death. She was 74 years old and in poor health. She suffered from a chronic pulmonary condition. Preceding and during the rape, she was choked and extensively bruised. The mental trauma was such that her mind retreated from the horror of what was happening to her, and she blacked out. This court is of the further opinion that "substantial risk of death" turns on the unique circumstances of an individual case. Considering the totality of the evidence and the circumstances of this case, the physical injuries sustained were sufficient to support a conclusion that a substantial risk of death had been created. Because Mrs. Williams didn't die on that occasion did not nor could it erase the fact of "substantial risk of death."

■ This court now directs its attention to the alleged error that the trial court should have instructed the jury on Cooper's theory of attempted rape.

Cooper's version of the events simply does not support the theory of attempted rape. Although he confessed to raping Mrs. Williams, he tried to repudiate that confession by maintaining that she made what he construed to be a sexual advance. When Mrs. Williams put her hand on his leg he responded and kissed her. When she resisted and started to struggle he succeeded in breaking away from Mrs. Williams and in so doing, choked her. Cooper's testimony in its most favorable light clearly shows that his intent to attempt the rape was totally lacking. The totality of the evidence reveals that he intended to and did rape her.

Where there was no evidence supporting Cooper's contention that he was entitled to an instruction on attempted rape, such an instruction was not warranted. See *Buchenburger v. Commonwealth,* Ky., 482 S.W.2d 747 (1972); *Couch v. Commonwealth,* 479 S.W.2d 636 (1972). In *Blanton v. Commonwealth,* Ky., 429 S.W.2d 407 (1968), the appellant, after being convicted of rape, argued that he was entitled to an instruction on the lesser degree offense of detaining a female against her will with intent to have carnal knowledge. The prosecutrix testified that she had been penetrated by the appellant. The medical testimony was uncertain about penetration. The doctor testified that he was not able to tell whether penetration had occurred. He would not testify that penetration had or had not taken place. At trial the appellant asserted an alibi defense. Under the totality of the evidence of that case this court rejected the appellant's contention by stating:

"Since the Commonwealth's evidence showed appellant had committed rape and the appellant's testimony showed he was not guilty by reason of his alibi, the issue in the case was adequately presented to the jury by an instruction covering the crime of rape and upon reasonable doubt." *Blanton v. Commonwealth, supra,* at 410.

Recently this court stated:

"An instruction on a lesser included offense should not be given unless the evidence is such that a reasonable juror could doubt that the defendant is guilty of the crime charged but conclude that he is guilty of the lesser included offense." *Luttrell v. Commonwealth,* Ky., 554 S.W.2d 75 (1977).

This court has reviewed the other alleged assignments of error and find them to be totally without merit.

The judgment is affirmed.

JONES, CLAYTON, REED and STERNBERG, JJ., concur.

LUKOWSKY, J., files a dissenting opinion in which PALMORE, C. J., joins.

STEPHENSON, J., joins in part one of the dissent.

LUKOWSKY, Justice, dissenting.

I would reverse the judgment and remand the case for a new trial for two reasons.

First, there was no evidence adduced by the Commonwealth which could fairly be said to support a finding of "serious physical injury" to Mrs. Williams. Fainting, bruises and a small laceration in the posterior portion of the vagina simply do not create a substantial risk of death, or cause serious and prolonged disfigurement, prolonged impairment of health, or prolonged loss or impairment of the function of any bodily organ as required by KRS 500.-080(15). Mrs. Williams completely recovered from these injuries within two to three weeks. These are mere physical injuries as defined by KRS 500.080(13). The instructions given by the trial judge were prejudicially erroneous in that they permitted, over the objection of Cooper, the jury to find that these injuries could raise the conduct in question to the status of a Class A felony. *Luttrell v. Commonwealth,* Ky., 554 S.W.2d 75, 78–79 (1977).

Second, the evidence taken as a whole is sufficient not only to support a conviction of attempted first-degree rape, but also to justify a reasonable doubt as to whether Cooper is guilty of the higher or lower offense. There was no direct evidence of penetration of the labia by the penis. Because of her fainting spell, Mrs. Williams was unable to testify to penetration. It would have to be inferred by the jury from circumstantial evidence, i. e., primarily, the tear in the vagina and the bruise on the mons pubis, which Mrs. Williams' attending physician admitted was equivocal to the point that the incident was "an attempted if not successful rape". Cooper, in his testimony, denied penetration, but admitted touching Mrs. Williams' vaginal area with his hands which could explain both the bruise and the tear. The trial judge committed prejudicial error when he declined to give a requested instruction on attempted first-degree rape. *Isaacs v. Commonwealth,* Ky., 553 S.W.2d 843, 844–845 (1977); *Muncie v. Commonwealth,* 308 Ky. 155, 213 S.W.2d 1019 (1948).

I am authorized to state that PALMORE, C. J., joins in this dissent and that STEPHENSON, J., joins in part one of this dissent.