Terry SOUDER, Appellant,

v.

COMMONWEALTH of
Kentucky, Appellee.

Supreme Court of Kentucky.

Oct. 16, 1986.

Rehearing Denied Dec. 18, 1986.

Wilbur M. Zevely, Florence, for appellant.

David Armstrong, Atty. Gen., Robert W. Hensley, John L. Ackman, Jr., Asst. Atty. Gen., Frankfort, for appellee.

## OPINION OF THE COURT

Terry Souder has been convicted of four different criminal offenses associated with the physical and sexual abuse of a small child. These are: (1) first-degree sodomy with sentence of life imprisonment; (2) first-degree assault with sentence of twenty years imprisonment; (3) first-degree criminal abuse with sentence of ten years imprisonment; and (4) first-degree sexual abuse with sentence of five years imprisonment. The judgment orders that these terms be served consecutively.[1]

In early December, 1984, the child's mother moved into Souder's trailer, to live with him. She brought along her two and one-half year old daughter, who was thereafter the victim of the child abuse. The abuse allegedly occurred on Monday, December 17, while the child was left alone in the trailer with the appellant. Upon her return, the child's mother found her child obviously injured. The appellant claimed that the child had fallen from the commode while attempting to turn on the lights. After some hesitancy, the child was taken to a nearby hospital for emergency treatment. She had injuries to her mouth which were diagnosed as burns, multiple areas of substantial bruising about her body, and a badly swollen arm.

The child was then moved to a second hospital, ostensibly for further treatment of the arm, but apparently primarily for examination regarding potential child abuse. At the second hospital the child was kept overnight, and physically examined for injuries from sexual abuse. The next morning the child was taken from the second hospital by her grandmother, who then took her to a third hospital in Cincinnati where she was further examined for sexual abuse, and also questioned by a social worker using "anatomically correct dolls" in an effort to discover evidence as to what had occurred. The child had bruising and tearing in both the vaginal and anal areas. The evidence of penetration of the vagina was incomplete, and the jury acquitted appellant of the rape charge, but found him guilty of first-degree sexual abuse.

All of the physical injuries proved to be relatively minor, and were successfully treated by the emergency room treatment that the child received at the various hospitals. None has required subsequent treatment, and there is no indication of any permanent physical injury. The existence or extent of psychological trauma can only be assumed. It is not developed by the evidence.

The child was so young as to be incapable of giving testimony at the trial. She would not answer any questions about the events. However, there was testimony from others, as will be discussed, indicating that the child identified the appellant as the person who had subjected her to the various physical injuries which were observed upon treatment. Further, there was testimony from both the child's grandmother and her mother sufficient to prove that these injuries had occurred while the child was in the appellant's care.

First we consider whether there was any evidence to sustain appellant's conviction for having committed anal sodomy on the child. The small rectal tears

1. Under KRS 532.110(1)(c), which limits aggregate sentencing, the sentences to terms of years could be ordered served consecutively, but not consecutively to the life term. *Shannon v. Commonwealth,* Ky., 562 S.W.2d 301 (1978).

found on the victim may have been sufficient to indicate that there had been some effort to penetrate the victim's anus, but there was nothing to prove "deviate sexual intercourse" which is one of the essential elements in sodomy in the first degree as set out in KRS 510.070. The definition of "deviate sexual intercourse," found in KRS 510.010(1), requires (in pertinent part) an "act of sexual gratification ... involving the *sex organs* of one person and the ... anus of another." (Emphasis added.) The medical evidence of record tends to prove that the rectal tears were not made by a male's sex organ, but on the contrary by some hard object other than a male sex organ. The only direct evidence on this point was testimony from the child's mother that when she asked the child in the hospital "what happened to her tail," "[s]he said Terry [the appellant] hurt it with his finger." The appellant claims that this evidence was inadmissible hearsay, but even if admissible it would add nothing proving the offense of sodomy. The appellant's Motion for Directed Verdict on the charge of first-degree sodomy should have been sustained.

■ Similarly, there is no evidence to prove an essential element of first-degree assault, namely, "serious physical injury." KRS 500.080(15) defines "Serious physical injury" as "physical injury which creates a substantial risk of death, or which causes serious and prolonged disfigurement, prolonged impairment of health, or prolonged loss of impairment of the function of any bodily organ." The only argument made by the Commonwealth to support "serious physical injury" is that because the child sustained burns in and about the mouth, which, standing alone, admittedly were not serious, that the child may have been exposed to smoke fumes which "create[d] a substantial risk of death." KRS 500.-080(15), *supra.* The child's grandmother testified, over objection, that the child told the grandmother that the appellant "had burnt her with a cigarette, or cigarette lighter." Without in any way depreciating the hideous nature of such an act, the fact remains that there was nothing to prove

that this child was in danger of death from this injury, or from any other injury inflicted upon her.

*Cooper v. Commonwealth,* Ky., 569 S.W.2d 668 (1978), referred to at oral argument, is inapposite. *Cooper* was a rape case wherein there was a physician's testimony that, although the victim was not in danger of death from the physical injuries inflicted upon her, because she was a "74-year-old woman with heart trouble and chronic lung disease" she was "at risk of death" from being "scared to death." *Id.* at 670. There was no similar evidence in this case to support a finding of "a substantial risk of death." Therefore, there was no occasion for submitting this determination to a jury. Cf. *Luttrell v. Commonwealth,* Ky., 554 S.W.2d 75 (1977).

The conviction for assault in the first degree must be set aside. Upon a new trial, if the evidence is the same, it is sufficient to sustain a conviction for intentionally causing physical injury to another person by means of a dangerous instrument, which is assault in the second degree. KRS 508.020(1)(b).

There was evidence admitted at the trial from five different witnesses, the child's mother, the grandmother, two different physicians, and a social worker, which the appellant challenges as inadmissible hearsay. This testimony consisted of statements made by the child to her mother and grandmother (at different times and in response to questions) as to how she was injured and who had injured her, statements made to the social worker who was investigating the possibility of sexual abuse with a view toward prosecution of the offender, and statements in the medical records as to who caused the injuries which were testified to by the physicians.

Rule 801(c) of the Federal Rules of Evidence provides a working definition of hearsay, as follows:

" 'Hearsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in

evidence to prove the truth of the matters asserted."

As such, all of the statements made by the child victim in the present case qualify as hearsay declarations. They were offered to prove what the child said about how she was injured and who injured her. Therefore, the sole question with reference to each of these various statements is whether such statement qualifies as evidence under some recognized exception to the hearsay rule.

The exceptions to the hearsay rule include spontaneous statements and excited utterances, certain statements made for the purpose of receiving medical treatment, and business records (including medical records) kept in the regular course of business. However, each of the various exceptions to the hearsay rules are defined and circumscribed with conditions, limitations and qualifications which are intended to provide the testimony with the same quality and reliability that would exist if the testimony were presented by a competent witness, in court and under oath, and subject to cross-examination. Anything less would implicate the confrontation clause of our Federal and State Constitutions. U.S. Const. amend. VI, Ky. Const. § 11. Thus, it will not do, as the Commonwealth contends, to create new exceptions simply because the evidence is arguably trustworthy and reliable, or is perceived as necessary to serve the interests of justice. Nor will it suffice to obscure the essential hearsay characteristics of the evidence under broad application of the term "res gestae," which in itself, is "a useless and misleading shibboleth...." *Preston v. Commonwealth,* Ky., 406 S.W.2d 398, 400 (1966).

The general rule as to when an out-of-court statement should be admitted under the spontaneous statement exception to the hearsay rule is well set out in Lawson, *Kentucky Evidence Law Handbook,* 8.60(B) (2d ed. 1984). Lawson states:

"A 'spontaneous' statement is one uttered under the stress of nervous excitement and not after reflection or deliberation. Whether or not a given statement

is 'spontaneous' depends upon an evaluation of the particular circumstances under which it was made, with the following circumstances most significant: (i) lapse of time between the main act and the declaration, (ii) the opportunity or likelihood of fabrication, (iii) the inducement to fabrication, (iv) the actual excitement of the declarant, (v) the place of the declaration, (vi) the presence there of visible results of the act or occurrence to which the utterance relates, (vii) whether the utterance was made in response to a question, and (viii) whether the declaration was against interest or self-serving."

▪ Whether or not a particular statement qualifies as "spontaneous" must "depend upon the particular circumstances in each case." *Consolidated Coach Corp. v. Earl's Adm'r,* 263 Ky. 814, 94 S.W.2d 6, 8 (1936). Thus, to a certain extent, because the circumstances in each case are different, no case is exactly in point as precedent. Deciding whether the circumstances in which a particular statement was made qualify as (sufficiently) "spontaneous" to admit the evidence, is sometimes an arguable point, and when this is so the trial court's decision to admit or exclude the evidence is entitled to deference.

With this background in mind, we consider the various statements to which objection was made.

▪ Since the child was barely three years old at the time of trial, and refused to respond to any questions about the events, the trial court, with the agreement of the Commonwealth, ruled that the child was incompetent to testify as a witness in the case. The appellant asks us to decide, as a threshold question, that because the child was incompetent as a witness, her out-of-court statements to others regarding the events should be excluded regardless of whether they would otherwise qualify as exceptions to the hearsay rule. However, the issues involved in deciding the admissibility of a spontaneous statement or excited utterance as outlined by Lawson in his *Kentucky Evidence Law Handbook* (quot-

ed *supra*), do not relate to the competency of the declarant, or to the declarant's availability to testify. However, we answered this question long ago in *Logsdon v. Commonwealth*, 215 Ky. 707, 286 S.W. 1067 (1926) wherein we held admissible statements from a three year old victim of attempted rape to her mother to the effect, "Mama, look what Bill has done to me," stating "the testimony was competent, though the child was of such tender years as to be incapable of testifying herself." *Id.* at 1067. *See also, Preston v. Commonwealth*, Ky., 406 S.W.2d 398 (1966) and *Wilson v. Commonwealth*, Ky., 492 S.W.2d 450 (1973), recognizing that spontaneous statements made by bystanders who are not available to testify are admissible under this exception to the hearsay rule.

On the other hand, the fact that the declarant is incompetent or otherwise unavailable to testify in itself is no basis for admitting hearsay evidence which does not meet the requirements of a recognized exception to the hearsay rule.

■ The child's grandmother gave testimony that the child told her at the hospital that "Terry hurt me," and that "Terry burnt me with a cigarette lighter." On cross-examination the grandmother changed this to "with a cigarette, or cigarette lighter." This testimony cannot qualify as an exception to the hearsay rule. The child's statements were given more than 24 hours after the alleged incident occurred, and in response to the grandmother's persistent questioning of the child regarding what had happened to her. *Hopper v. Commonwealth*, 311 Ky. 655, 225 S.W.2d 100 (1949). Although the passage of time is simply one of the relevant considerations, in this case the time factor, coupled with the method of eliciting the child's statements, disqualified these statements as an exception to the hearsay rule. *See Cook v. Commonwealth*, Ky., 351 S.W.2d 187 (1961), where statements made about an hour after the occurrence were held admissible, but statements six hours later were held inadmissible.

■ Next, we consider the statements incriminating the appellant, made by the child to her mother commencing several days after the occurrence. The reliability of these statements is subject to question not only because of the passage of time, but because the mother initially told a story in support of the appellant's claims, stating that the child said she was injured from falling off the commode. It may well be that in the initial stages the child had been prompted to cover up for the appellant. This factor, inconsistent statements as to the cause of the injuries, is not in itself determinative of the inadmissibility of the child's incriminating statements against the appellant. However, as in *Hopper v. Commonwealth, supra,* the mother testified as to statements made commencing at least two days after the occurrence. The circumstances of these statements are simply too remote and unreliable to qualify under the spontaneous exception to the hearsay rule.

■ Next, we consider the testimony of a social worker who interviewed the victim at the third hospital to which the child was taken. The interview was clearly for the purpose of investigating into the possibility of child abuse and, if there was evidence, testifying about it. There is no recognized exception to the hearsay rule for social workers or the results of their investigations. This includes the pointing and demonstrating performed by the child in the presence of the social worker, using a so-called "anatomically correct" doll, because hearsay includes "nonverbal conduct of a person, if it is intended by him as an assertion." Fed.R.Evid. 801(a)(2).

Recently, in *Bussey v. Commonwealth*, Ky., 697 S.W.2d 139 (1985), we held that the testimony of a social worker was inadmissible hearsay, rejecting the Commonwealth's argument that "the necessity of this type of hearsay evidence should cause it to fall within the 'residual' exception to the hearsay rule as recognized by the Federal Rules of Evidence." This so-called "residual" exception to the Federal Rules of Evidence is stated in Fed.R.Evid. 803(24)

and 804(b)(5). Our Court has yet to decide whether a "residual" exception to the hearsay rule is necessary, proper, or constitutionally permissible under § 11 of the Kentucky Constitution. The intermediate appellate court has considered the proposition in one case, *Maynard v. Commonwealth,* Ky.App., 558 S.W.2d 628 (1977). Without passing on its validity, the Court of Appeals rejected its applicability to the facts in that case. We need not consider this question in the present case because the "residual" exception as set out in the Federal Rules of Evidence is circumscribed by requirements which have not been met in the present case. It would not qualify under any circumstances.

■ Last, we consider the admissibility of testimony from two physicians who participated in the medical examination and investigation of the abused child which took place at the third hospital to which the child was taken. That portion of the testimony of these two witnesses that incriminated the appellant was based on statements by others contained in the medical records. Principally, they were statements identifying the appellant as the wrongdoer based on what the social worker had been told by the child's grandmother and the child when the child was brought in for examination. Thus the statements are not only hearsay, but hearsay on hearsay.

Next, although we recognize an exception to the hearsay rule involving the admissibility of medical records (*Buckler v. Commonwealth,* Ky., 541 S.W.2d 935 (1976)), this exception is premised on the admissibility of information in such records "important to an effective diagnosis or treatment." Lawson, *supra,* § 8.45(B)(1). This does not include information provided as part of a criminal investigation, nor does it usually include information identifying the name of the wrongdoer because nor-

mally the name of the wrongdoer is not essential to treatment.[2]

■ Thus, because of the impermissible use of hearsay evidence against the appellant, the appellant's remaining convictions for first-degree criminal abuse and first-degree sexual abuse must also be reversed.

The charges of first-degree sodomy and first-degree assault are reversed and dismissed for lack of evidence. The appellant is subject to retrial for a lesser degree of assault consistent with the evidence. The charges of first-degree criminal abuse and first-degree sexual abuse are reversed because inadmissible hearsay were utilized as evidence, and are remanded subject to being retried in further proceedings consistent with this opinion.

STEPHENS, C.J., and STEPHENSON, VANCE and WHITE, JJ., concur.

LEIBSON, J., dissents by separate opinion in which GANT, J., joins.

WINTERSHEIMER, J., dissents by separate opinion.

LEIBSON, Justice, dissenting.

Respectfully, I dissent.

The testimony given by the child's grandmother regarding statements made by the child incriminating the appellant as the person causing her injuries, are arguably admissible. Therefore, the decision of the trial court to admit them should be sustained.

These statements were made a number of hours following the occurrence, and in response to inquiry, both circumstances mitigating against admissibility. However, there is evidence of record from which it can be inferred that the child was still suffering from her injuries and in a state of emotional upset at the time that her

---

**2.** If the statements at issue otherwise qualified as admissible as given for the purpose of proper diagnosis and treatment (which they were not), whether they were made by the child or the grandmother would not be determinative.

"[I]f an adult may relate history to his treating doctor, so as to make that doctor competent to testify, it seems plain that history related to a treating doctor by a parent, custodian, guardian or nurse of an infant of tender years must also be admissible." *Miller v. Watts,* Ky., 436 S.W.2d 515, 521 (1969).

grandmother talked to her. This, coupled with the child's youth and the relationship of trust that existed between the child and her grandmother, and the fact that the manner of inquiry was to press for the truth rather than to push the child to incriminate the appellant, are all circumstances bearing on whether this evidence was admissible under the spontaneous statements exception to the hearsay rule. The circumstances of the grandmother's inquiry is in sharp contrast with those involved in the subsequent investigation by the social worker.

Had the trial court ruled inadmissible the grandmother's testimony about the statements the child made incriminating the appellant, I would affirm. However, this testimony falls close enough to the relevant factors permitting a hearsay exception in these circumstances so that I would defer to the trial court's judgment that the statements were admissible.

GANT, J., joins in this dissent.

WINTERSHEIMER, Justice, dissenting.

I respectfully dissent.

There was no error in admitting into evidence the spontaneous utterances of the two and a half-year-old victim. *Preston v. Commonwealth*, Ky. 406 S.W.2d 398 (cert. den.) 386 U.S. 920, 87 S.Ct. 886, 17 L.Ed.2d 792 (1967). The time lapse between the crime and the child's statements to her mother and grandmother did not reduce their value because the child was still under the stress of nervous excitement. The child-victim had no real motive to fabricate and the trustworthiness of her statements fit into the spontaneous exclamation exemption to the hearsay rule. *Buckler v. Commonwealth*, Ky. 541 S.W.2d 935 (1976).

Considering the seriousness of the child's injuries, the trial judge was within his sound discretion in denying the motions for directed verdicts of acquittal on the charge of first-degree assault. A jury, relying on the evidence presented, could reasonably have convicted the accused of first-degree assault. A jury, relying on the evidence presented, could reasonably have convicted the accused of first-degree assault. The photographs presented at trial reveal that the victim was bruised and beaten. She had a large contusion on her forehead as well as a bruised and swollen arm. Most noticeable were the severe burns on her lips and mouth. Such injuries were sufficient to satisfy the requirement of serious physical injury contemplated by KRS 508.-010. The inevitable scarring related to serious burns could render the child's lips disfigured and would qualify as a physical injury which causes serious and prolonged disfigurement under KRS 500.080(15).

My review of the record indicates that the conviction for first degree assault should be affirmed.