RENDERED: JUNE 21, 2007
TO BE PUBLISHED

# 𝔖upreme ℭourt of 𝔎entucky

FINAL

2005-SC-000814-DG

DATE ~~July 12,07~~

B. B. (A CHILD UNDER EIGHTEEN)                                    APPELLANT

ON REVIEW FROM COURT OF APPEALS

V.                                    2005-CA-000254

ADAIR CIRCUIT COURT NO. 03-J-000044-002

COMMONWEALTH OF KENTUCKY                                    APPELLEE

## OPINION OF THE COURT BY JUSTICE SCHRODER

### REVERSING AND REMANDING

This juvenile matter is before this Court on discretionary review. The Appellant, B.B., was adjudicated guilty by the Adair District Court of one count of first-degree sodomy based on the testimony and hearsay statements of a very young child. The child witness lacked testimonial competence, and the hearsay statements attributed to the child were unreliable, and therefore, inadmissible. Accordingly, we reverse and remand.

On March 2, 2003, the Appellant, B.B., then age 14, was visiting his cousin Barbara and her two children, C.Y., then age 3½, and T.Y., then age 1½, at Barbara's home. Barbara personally supervised the children during B.B.'s visit, with the exception of a 20 minute period of time when she was in the bathroom taking a shower and getting dressed. Barbara did not hear anything unusual while she was in the bathroom,

which was adjacent to the bedroom where the children were watching television, nor did she see anything unusual when she came out. B.B., C.Y., and T.Y. were sitting on the floor watching television. None of the children's clothes were disheveled, she saw nothing of concern, nor did C.Y. express anything of concern. Barbara alleged that four days later, while driving to B.B.'s house, C.Y. became upset and made an allegation of sexual abuse against B.B. Barbara confronted B.B.'s parents, who questioned B.B. B.B. denied any wrongdoing. Barbara then took C.Y. to the emergency room of the Russell County Hospital.[1]

At the emergency room, C.Y. was interviewed by a nurse, Edith Ernst, using a form designed for taking reports of sexual abuse. According to Ernst, C.Y. indicated to her that B.B. had licked her buttocks, breasts, and genital area, and put his finger in her. C.Y. was then examined by a doctor, who found no physical evidence of sexual abuse. The hospital notified police and social services. C.Y. was subsequently interviewed by a social worker at the emergency room, and later by another social worker. B.B. was interrogated by a police detective and denied the allegations. B.B. was subsequently charged with three counts of first-degree sodomy, and one count of first-degree sexual abuse.

Over objection, C.Y., then four years old, was found competent to testify at B.B.'s adjudication hearing. Therein, when asked to state what she told the nurse and social worker, C.Y. replied, "He licked my boobies and licked my frog and licked my butt." C.Y. readily admitted that her mother helped her figure out what words to use and what to say that day in court. When asked for any surrounding details of the alleged incident, C.Y.'s testimony was conflicting and nonsensical. Nurse Ernst was permitted to testify

---

[1] It is unclear from the record precisely what C.Y. allegedly told her mother. The emergency room admission assessment indicates "inappropriately touched" as the mother's complaint.

as to her interview with C.Y. at the emergency room.[2] There was conflicting testimony as to whether Barbara had exposed C.Y. to pornography, as well as whether Barbara had previously expressed suspicion of, or if C.Y. had previously made statements accusing, other relatives of sexually abusing her.

B.B., then age 15, testified in his own defense and denied the allegations. B.B. testified that while Barbara was in the shower, he, C.Y., and T.Y. had simply played with toy cars and watched television. The trial court adjudicated B.B. guilty of one count of first-degree sodomy,[3] and committed him to the Department of Juvenile Justice as a sexual offender. The circuit court affirmed on appeal, and discretionary review was denied by the Court of Appeals. We accepted discretionary review, and reverse.

Appellant first contends that the trial court erred in finding C.Y. competent to testify. KRE 601 provides:

> (b) Minimal qualifications. A person is disqualified to testify as a witness if the trial court determines that he:
>
> (1) Lacked the capacity to perceive accurately the matters about which he proposes to testify;
>
> (2) Lacks the capacity to recollect facts;
>
> (3) Lacks the capacity to express himself so as to be understood, either directly or through an interpreter; or
>
> (4) Lacks the capacity to understand the obligation of a witness to tell the truth.

Competency is an ongoing determination for a trial court. Kentucky v. Stincer, 482 U.S. 730, 740, 107 S. Ct. 2658, 96 L. Ed. 2d 631 (1987). An appellate court may consider a trial court's competency determination from a review of the entire record, including the

---

[2] Contrary to the nurse's testimony, C.Y. made no allegation at trial that B.B. had put his finger in her.
[3] The trial court explained that it found B.B. guilty of one count of sodomy, rather than three (as charged), on grounds that the "licking" was one continuous act. The trial court dismissed the sexual abuse count based on insufficiency of the evidence.

3

evidence subsequently introduced at trial. Id. at 743. Our review of the record clearly shows that C.Y. failed to meet the minimal qualifications for competency under KRE 601, as she lacked the capacity to understand the obligation of a witness to tell the truth and/or lacked the capacity to recollect facts.

C.Y. was 3 ½ years old at the time of the alleged incident, and four years old at the time of the competency hearing. The prosecutor's attempt to show C.Y. knew right from wrong was a disaster. C.Y. was unable to comprehend the discussion. Many answers were not responsive to the questions, and, when asked directly if she understood "what telling the truth means" or "what being honest is and telling exactly what happens" means, C.Y. shook her head "no". C.Y. could answer simple questions like "what color is your shirt", (pink), but did not know how to react or answer when the prosecutor said it was "orange". Trying another approach, the prosecutor tried to discuss the difference between lying and telling the truth, but C.Y did not get those concepts either. She had no concept of a lie, nor the consequences of lying. Substitution of right and wrong for truth and lie went nowhere. The prosecutor's passing of the witness appears to be more out of frustration than out of a sufficiency of the proof of competency. Defense counsel was not able to do better. Even using simple examples of cartoon characters that C.Y. was familiar with (to see if she knew the difference between real and make-believe) didn't shed any light on the issue. Upon further inquiry, C.Y. went into a discussion of her fingernails.

Based on C.Y.'s performance at the competency hearing, the trial court should have found her incompetent under KRE 601(b)(4). C.Y. failed to demonstrate any understanding whatsoever of the obligation of a witness to tell the truth, or the consequences of lying. In the pre-Rules case of Swanigan v. Commonwealth, 240 Ky.

4

504, 42 S.W.2d 726, 730 (1931), our predecessor, the then Court of Appeals, held that a seven year old child who, in a preliminary examination by the trial court, "show[ed] an absolute lack of understanding on his part of the nature of an oath, the duty of a witness, and the consequence of misstating the facts," was incompetent to testify.[4] KRE 601(b)(4) demands no less. Therefore, the trial court abused its discretion in finding C.Y. competent to testify. Whitehead v. Stith, 268 Ky. 703, 709, 105 S.W.2d 834, 837 (1937)(a trial court's competency determination is reviewed under an abuse of discretion standard).

The trial court's error manifested itself in C.Y.'s testimony at the adjudication hearing. The Commonwealth's theory of the case was that B.B. had abused C.Y. while her mother was in the shower. When questioned as to how the alleged incident happened, C.Y.'s answers were nonsensical and conflicting. She would also usually agree to whatever set of facts was suggested. C.Y. said, or agreed, that the incident happened when she was jumping on the bed; when she was lying down and B.B. was sitting in the chair; when she and B.B. and T.Y. were all jumping on the bed; when she was in the top of her bunk bed and B.B. was on the bottom; and when she and B.B. were both "in the floor". She testified that she was jumping on the bed the whole time her mom was in the shower, and that they only jumped on the bed for a little time. She said, or agreed, that her clothes were off when it happened, that her clothes were on when it happened, and even that B.B. took her clothes off and her mother helped her put them back on. She said that she was wearing a red shirt and shorts, but had told a police officer she was wearing a sweatshirt and jeans. She testified that she yelled

---

[4] In Swanigan, the trial judge "asked [the child] if he knew what it was to be a witness, and he said he did not. He asked him if he knew what would be done to him if he were sworn as a witness and did not tell the truth. He said he did not. He asked him if he knew what would become of him if he told a lie, and he said he did not." 240 Ky. at 510, 42 S.W.2d at 729.

when it happened and her mom heard her; then agreed with the prosecutor that she didn't tell her mom until later; and then testified that she screamed and told her mom right after it happened, and that B.B. was there in the bedroom when she told her mom.

This Court once warned in a child abuse case that:

> [t]here may be a temptation among judges to let pity for small children who may have been victimized . . . overcome their duty to enforce the rules of evidence. . . . "The rules of evidence have evolved carefully and painstakingly over hundreds of years as the best system for arriving at the truth. They bring to the law its objectivity. Their purpose would be subverted if courts were permitted to disregard them at will . . . [O]beying these rules is the best way to produce evidence of a quality likely to produce a just result."

Sharp v. Commonwealth, 849 S.W.2d 542, 546 (Ky. 1993) (quoting Fisher v. Duckworth, 738 S.W.2d 810, 813 (Ky. 1987)).

Not only did C.Y. continuously contradict herself, but her testimony that she told her mother right after the alleged incident happened and that her mother helped her put her clothes back on, was proven false by her mother.[5] Such made-up or false testimony conclusively proves that four year old C.Y. did not understand the obligation of a witness to tell the truth, or, in the alternative, lacked the capacity to recollect facts. Accordingly, if we did not hold C.Y. incompetent under KRE 601(b)(4), we would be compelled, in the alternative, to hold her incompetent under KRE 601(b)(2). The trial court's finding of competency was an abuse of discretion and constitutes reversible error. Whitehead, 268 Ky. at 709, 105 S.W.2d at 837.

Appellant's second argument is that the trial court erred in admitting the statements allegedly made by C.Y. to the emergency room nurse, Edith Ernst. C.Y. was presented at the emergency room as a sexual abuse victim, where she was

---

[5] Barbara testified that when she came out of the shower, C.Y. was watching television, her clothes were not disheveled, that C.Y. expressed nothing of concern at the time, and that C.Y. made no allegation of sexual abuse until four days later.

6

interviewed by Nurse Ernst, using a form designed for taking sexual abuse reports. Ernst testified that C.Y. told or indicated to her that B.B. had licked her buttocks, breasts, and genital area, and put his finger in her. Over Appellant's objection, the trial court admitted the statements under KRE 803(4), the hearsay exception for statements made for the purpose of medical treatment or diagnosis.

Under the facts of this case, we conclude that C.Y.'s incompetence would extend to the hearsay. We believe the logic expressed by Justice Vance in his dissenting opinion in Drumm v. Commonwealth, 783 S.W.2d 380, 386-387 (Ky. 1990), to be particularly applicable to the facts of the present case:

> [W]e should be particularly cautious about admitting into evidence the out-of-court statements to a physician of any child who is not competent to testify in person because a child whose understanding is not sufficient to allow him to testify might well also fail to understand that the recovery of his health is dependent upon the truth of his statements to the doctor.
>
> The reason we exclude hearsay testimony in any case is that the declarant is not subject to cross-examination and that there is no sufficient guarantee of the trustworthiness of the out-of-court statement. . . There is no way to determine the trustworthiness of the out-of-court statements of a child whose lack of understanding renders him incompetent to testify.

Similarly, it is impossible to guarantee the trustworthiness of the out-of-court statements of C.Y., whose lack of understanding of the concept of truthfulness rendered her incompetent to testify. And, it goes without saying, the immaturity that rendered her incompetent at trial would have existed at the time of the interview as well. "[C]ommon sense must not be a stranger in the house of the law." Cantrell v. Kentucky Unemployment Ins. Comm'n, 450 S.W.2d 235, 237 (Ky. 1970). Accordingly, we

conclude that C.Y.'s statements made to the nurse are also unreliable, and, therefore, inadmissible. The admission of this testimony is error.

To the extent that Souder v. Commonwealth, 719 S.W.2d 730 (Ky. 1986) and Edwards v. Commonwealth, 833 S.W.2d 842 (Ky. 1992) hold that testimonial incompetence is not a consideration in determining the admissibility of out-of-court statements, they are hereby overruled. Rather, we adopt the view of Professor Lawson, that testimonial incompetence of a declarant should be an obstacle to the admission of the declarant's out-of-court statements if the reason for the incompetence is one which would affect the reliability of the hearsay. ROBERT G. LAWSON, THE KENTUCKY EVIDENCE LAW HANDBOOK 675 n.53 (4th ed. 2003).

The final issue concerns the admission of testimony by a social worker. It is well-settled that "[t]here is no recognized exception to the hearsay rule for social workers or the results of their investigations." Souder, 719 S.W.2d at 734. The circuit court, on appeal, held the admission of the social worker's testimony was error, but harmless. In light of our remand, the issue of harmless versus reversible error is moot.

For the aforementioned reasons, the adjudication of guilt entered in the Adair District Court is reversed and the case is remanded for further proceedings consistent with this opinion.

All sitting. All concur.

8

ATTORNEY FOR APPELLANT:

Timothy G. Arnold
Assistant Public Advocate
Department of Public Advocacy
100 Fair Oaks Lane, Suite 302
Frankfort, KY 40601


ATTORNEY FOR APPELLEE:

Gregory D. Stumbo
Attorney General

David W. Barr
Assistant Attorney General
Office of Attorney General
Office of Criminal Appeals
1024 Capital Center Drive
Frankfort, KY 40601-8204