COOK, Circuit Judge.
Petitioner James Allen Peters appeals from the district court’s dismissal of his petition for a writ of habeas corpus. Peters is serving a thirty-five year sentence after pleading guilty to first-degree rape and first-degree assault and then unsuccessfully attempting to withdraw his plea. Peters argues: (1) that he was denied effective assistance of counsel at his motion to withdraw his guilty plea; (2) that the trial court should have given him a Faretta warning before he argued his motion to withdraw; and (3) that he was denied effective assistance of counsel when his appointed counsel failed to obtain an expert opinion about whether his victim’s injuries sufficed to support a first-degree rape charge. Finding no merit in Peters’s claims, we affirm.
I
In 1996, Christy Pierce entered a hospital with ligature marks around her neck, wrists, and ankles. Blood was pooling in her eyes. Pierce reported that while she slept, Peters, her roommate, strangled her with a rope until she passed out, tied her feet and hands with tape, and raped her. The examining doctor found blistered hemorrhages in Pierce’s conjunctiva (the membrane that lines the eyelids), rope burns around her neck, and petechia (purplish-red spots caused by intradermal hemorrhage) on her neck, face, and eardrums. Her body was bruised, but an examination of her genitalia revealed no bleeding or lacerations.
A Kentucky grand jury charged Peters with first-degree rape and first-degree assault. Upon arraignment, the trial court appointed public defender Thomas Hall to represent Peters; Hall in turn arranged for public defender Anne Hardy to assist him. On the day set for trial, Peters pleaded guilty, accepting the prosecution’s recommended thirty-five year sentence on the rape charge and twenty-year sentence on the assault charge, with the sentences to run concurrently. But prior to final sentencing, Peters moved pro se to withdraw his plea, arguing “that it was not knowingly, intelligently and voluntarily entered.” Peters also notified the court that his counsel informed him “that they will be unable to represent him in this motion, and thus Defendant ... requests that the court appoint alternative counsel to represent him at this and all subsequent hearings.”
Before a hearing on the motion, Hardy requested to withdraw as Peters’s lawyer on the grounds that she recommended to Peters that he enter the plea. The trial court allowed Hardy to withdraw, but only on the condition that Hall remain as Peters’s “counsel of record.” Peters stood before the bench and stated no objection to Hardy’s withdrawal. In fact, when the court indicated that Hall would continue as counsel, Peters nodded his head in agreement.
*455 The court then asked Peters if he wanted to argue the motion to withdraw himself. Peters replied, “Yes, Your Honor,” and addressed the court with Hall by his side. Peters explained that, the week he entered his plea, he was sick with the flu, suffering a fever, chills, and stomach cramps, and unable “to handle intellectually the argument about whether [to] enter a guilty plea.” On top of that, Peters alleged that “there were several things told to me ... that were not correct” and accused his lawyers of incorrectly reporting that one of his primary witnesses had been called to testify for the prosecution and that another was in jail.
The court responded by reviewing events prior to accepting Peters’s plea. It reminded Peters of the in-chambers meeting where the court meticulously ascertained that Peters was entering the plea voluntarily, knowingly, and of his free will. The court noted that, in addition to going over the written plea, it explained Peters’s rights to him in the presence of counsel and found him competent to enter the plea. In addition, when the court asked Peters if he committed the charged crimes, Peters replied, “I’m guilty, Your Honor.” Finally, the court noted that Peters graduated from college and completed some graduate education. In view of these facts, the court overruled Peters’s motion. After-wards, Hall stood at the bench and discussed future proceedings with the court.
Peters then filed a pro se motion for reconsideration, supplying affidavits from two inmates confirming his illness. When Peters appeared with Hall for final sentencing and consideration of this motion, the court praised Hardy and Hall for doing a “commendable job” representing Peters. As to Peters’s motion, the court found that neither an illness nor anything else indicated an inability to knowingly and voluntarily plead guilty. After repeating that Peters admitted guilt, the court overruled his motion to withdraw his plea and sentenced him to thirty-five years for the rape charge and twenty years for the assault charge, as recommended by the plea agreement.
Having exhausted his Kentucky remedies, Peters petitioned for habeas corpus relief under 28 U.S.C. § 2254. The district court dismissed Peters’s petition but granted a Certificate of Appealability on two issues, which we expanded to include a third issue. Peters now appeals.
II
We review de novo a district court’s judgment denying habeas corpus relief. Bey v. Bagley, 500 F.3d 514, 518 (6th Cir.2007). The Antiterrorism and Effective Death Penalty Act of 1996 (“AEDPA”) governs our review because Peters filed his petition after AEDPA’s effective date. Stewart v. Erwin, 503 F.3d 488, 493 (6th Cir.2007). AEDPA prohibits habeas relief with respect to any claim adjudicated on the merits in the state courts, unless the adjudication resulted in (1) a decision contrary to, or involving an unreasonable application of, clearly established federal law as determined by the Supreme Court; or (2) a decision based on an unreasonable determination of the facts in light of the evidence presented to the state courts. 28 U.S.C. § 2254(d).
AEDPA’s “contrary to” clause allows habeas relief if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law, or decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. Williams v. Taylor, 529 U.S. 362, 405, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000). AEDPA’s “unreasonable application” clause, by contrast, allows habeas relief if the state court identifies the correct governing legal principle from the Supreme Court’s decisions but unrea *456 sonably applies that principle to the facts of the petitioner’s case. Id. at 413, 120 S.Ct. 1495.
In analyzing whether a state court decision is “contrary to” or an “unreasonable application of’ clearly established Supreme Court precedent, we only look to the holdings of the Supreme Court’s decisions as of the time of the relevant state-court decision. Lockyer v. Andrade, 538 U.S. 63, 71-72, 123 S.Ct. 1166, 155 L.Ed.2d 144 (2003); See also Williams, 529 U.S. at 412, 120 S.Ct. 1495. We also look to courts of appeals’ decisions, not as binding precedent, but to inform our analysis of Supreme Court holdings and to determine whether the Supreme Court had clearly established a legal principle. See Hill v. Hofbauer, 337 F.3d 706, 716 (6th Cir.2003). Finally, we presume that the state court’s factual findings are correct, unless Peters rebuts that presumption by clear and convincing evidence. See 28 U.S.C. § 2254(e)(1); McAdoo v. Elo, 365 F.3d 487, 493-94 (6th Cir.2004).
A. Ineffective Assistance of Counsel During Peters’s Motion to Withdraw the Guilty Plea
Peters claims that he was denied effective assistance of counsel during his motion to withdraw when the trial court allowed Hall to remain as counsel. According to Peters, Hall was placed in the impossible position of advocating his own alleged misconduct or taking a position contrary to that of his client, an actual conflict that precluded Hall from representing Peters.
On direct appeal, the Kentucky Supreme Court rejected this claim, concluding that Peters was not denied the assistance of counsel because the trial court insisted that Hall remain as counsel before permitting Hardy to withdraw and because Hall stood with Peters during the proceeding. The court also found that Hall’s representation was not illusory due to any conflict of interest, noting that Peters offered no evidence supporting the misrepresentation charge and made no specific objection to Hall continuing as counsel of record. AEDPA limits our inquiry to determining whether the Kentucky Supreme Court’s decision was contrary to, or an unreasonable application of, clearly established federal law as determined by the Supreme Court, and the decision suffices under this standard.
Where a defendant’s Sixth Amendment right to counsel attaches, the right is denied when an attorney’s actual conflict of interest adversely affects his performance. See Mickens v. Taylor, 535 U.S. 162, 166, 122 S.Ct. 1237, 152 L.Ed.2d 291 (2002); Cuyler v. Sullivan, 446 U.S. 335, 344, 100 S.Ct. 1708, 64 L.Ed.2d 333 (1980); see also Whiting v. Burt, 395 F.3d 602, 611 (6th Cir.2005) (“[A] [mere] claim of a conflict of interest, by itself, is insufficient to justify reversal of a conviction.”). Although Peters posits that a conflict of interest at a hearing on a motion to withdraw a guilty plea deprives a defendant of counsel at a “critical stage” under Mempa v. Rhay, 389 U.S. 128, 134, 88 S.Ct. 254, 19 L.Ed.2d 336 (1967), he fails to rebut the Kentucky Supreme Court’s conclusion that Hall’s representation was not illusory. Peters’s motion to withdraw did not mention any conflict with Hall; nor did Hall perceive one. Finally, when the trial court allowed Hardy to withdraw while advising Peters that Hall would remain, Peters nodded his head in agreement. DVD of Motion to Withdraw at 11:00:54.
The court, having confirmed the absence of any conflict, then asked Peters if he would like to present the motion to withdraw himself. Peters agreed and argued that illness prevented him from knowingly and intelligently pleading guilty. Al *457 though Peters did mention that “several things told to him were not correct,” Peters never accused Hall of forcing him to plead or misrepresenting facts. It was only during post-conviction proceedings that Peters first accused his attorneys of coercion. Even then, Peters blamed Hardy, not Hall, for the alleged misrepresentations about the status of two witnesses. And to the extent that Hall failed to act during the motion to withdraw, that worked to respect Peters’s decision to argue the motion himself, the consequences of which Peters cannot now escape by pointing to Hall’s inactivity. Peters opted for hybrid representation by consenting to Hall remaining as counsel but deciding to argue the motion himself, and this distinguishes this case from those the dissent cites. Moreover, Hall remained at Peters’s side, available to consult with Peters before and during the motion.
B. The State Trial Court’s Failure to Give a Faretta Warning
Peters makes the related complaint that the state trial court violated the principles of Faretta v. California, 422 U.S. 806, 835, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975), by failing to ensure that he waived his right to counsel with his “eyes wide open” before allowing him to argue his motion to withdraw pro se. Appellant’s Br. 14. The Kentucky Supreme Court dismissed this claim on direct appeal, finding no reversible error because Peters was never without the assistance of counsel and was therefore not denied his constitutional rights, and because the trial court did not abuse its discretion in rejecting Peters’s plea withdrawal.
The Constitution protects a criminal defendant’s right to present his own defense and to be represented by counsel. Faret-ta, 422 U.S. at 833-34, 95 S.Ct. 2525. When a defendant opts to present his own defense, he waives the right to representation. Id. at 835, 95 S.Ct. 2525; see also United States v. Cromer, 389 F.3d 662, 680 (6th Cir.2004). A court, therefore, must ensure that waiver is knowing and intelligent. Faretta, 422 U.S. at 835, 95 S.Ct. 2525. Peters contends the Kentucky Supreme Court impermissibly excused the trial court’s failure to do so by finding that he was never without counsel. We disagree.
In Cromer, we canvassed federal authority regarding when Faretta warnings are required. Noting “conflicting authority,” we found that most courts “have held that there is a presumption against a waiver of counsel, and that Faretta warnings are only required when a defendant has clearly and unequivocally asserted his right to proceed pro se.” See 389 F.3d at 680-81 (collecting cases). At issue here is a type of hybrid representation similar to that in Cromer, where a federal defendant charged with drug trafficking and firearms possession requested permission from the district court to personally cross-examine a witness, even though the defendant had appointed trial counsel. Id. at 679-80. The district court allowed this without providing a Faretta warning. Id. On appeal, the defendant argued that this violated his Sixth Amendment rights because the district court did not explicitly find that he had knowingly and voluntarily waived his right to counsel. Id. We disagreed, holding that because Cromer never “clearly and unequivocally” asked to proceed pro se, the court was not required to secure a waiver of his right to counsel before permitting him to cross-examine the witness. Id. at 682-83 (acknowledging that, in hybrid representation cases, some courts require Faretta warnings before defendant assumes “core functions” of counsel).
Peters made no clear and unequivocal demand to proceed pro se. Instead, his *458 motion to withdraw his plea requested appointment of counsel, and when the trial court indicated to him that Hall would remain his lawyer, Peters nodded his head in agreement. And while Peters spoke with the court directly about his motion to withdraw his guilty plea, Hall remained for all other purposes: Hall conversed with the court immediately after Peters’s argument, represented Peters through the judgment of conviction, filed a notice of appeal, and sent Peters’s case to the Department of Public Advocacy. As no clearly established Supreme Court precedent required a Faretta warning in these circumstances, the Kentucky Supreme Court’s decision was not unreasonable.
C. Counsel’s Failure to Obtain Expert Opinion
In his post-conviction proceedings, Peters argued that trial counsel should have sought expert opinion about whether Pierce’s injuries sufficed to support the charges against him. The Kentucky Court of Appeals refused to consider this claim on its merits, reasoning Peters should have raised it in his direct appeal. The court conceded that “it is somewhat unusual for a defendant to challenge trial counsel’s performance on direct appeal,” but emphasized that “Peters did so” and therefore should have “[made] that challenge as thorough as he could.” The district court disagreed with this procedural default analysis but still denied relief on the merits.
We find that Peters proeedurally defaulted this claim. In making this determination, we use the Maupin v. Smith factors: (1) is there an applicable state procedural rule?; (2) did petitioner fail to comply with that rule?; (3) was the rule actually enforced in petitioner’s case?; and (4) is the state procedural forfeiture an adequate and independent state ground on which the state can rely to foreclose review of a federal constitutional claim? 785 F.2d 135,138 (6th Cir.1986).
Prongs (1) and (3) are met because the Kentucky Court of Appeals explicitly refused to consider Peters’s new claim after finding that he failed to comply with a state procedural rule when he raised some ineffective assistance claims on direct appeal, and then attempted to raise others in his post-conviction proceedings. Prong (4) is also satisfied because we hold (albeit in unpublished opinions) that the procedural bar set forth in Kentucky post-conviction proceedings constitutes an adequate and independent state law ground. Wilson v. Webb, 107 Fed.Appx. 516, 518 (6th Cir. 2004) (“Rule 11.42 is an adequate and independent ground foreclosing review of a petitioner’s habeas claim.”); see also Hardin v. Chandler, 36 Fed.Appx. 769, 771 (6th Cir.2002).
Prong (2)—failure to comply with the state rule—is also satisfied. Kentucky Rule of Criminal Procedure 11.42 prohibits post-conviction relief grounded upon issues “which could and should have been raised” on direct appeal. Thacker v. Commonwealth, 476 S.W.2d 838, 839 (Ky.1972). Although a post-conviction Rule 11.42 motion is ordinarily the “appropriate avenue” to claim ineffective assistance, Osborne v. Commonwealth, 992 S.W.2d 860, 863 (Ky. Ct.App.1998), when a criminal defendant opts to raise this on direct appeal, Kentucky limits a later 11.42 motion “alleging ineffective assistance of counsel at the original trial .... to the issues that were not and could not be raised on direct appeal.” Haight v. Commonwealth, 41 S.W.3d 436, 441 (Ky.2001).
The question, then, is whether Peters could have raised this claim on direct appeal, and we find that he could. Peters knew the relevant facts before advancing his direct appeal. At his Rule 11.42 evi- *459 dentiary heaving, Peters admitted, “I tried to tell [Hall and Hardy] again and again that I felt we needed a doctor to testify on ... whether or not this was a serious physical injury,” and “[I] told [Hall] several times that something was messed up” with the prosecution’s allegedly mixed-up forensic report on the injuries. Thus, Peters recognized the allegedly egregious act of counsel prior to his direct appeal, and, since Peters otherwise made counsel’s performance an issue on direct appeal, the state court appropriately barred him from raising it in post-conviction proceedings. See Gross v. Commonwealth, 648 S.W.2d 853, 857 (Ky.1983) (holding “the proper procedure for a defendant aggrieved by a judgment in a criminal case is to directly appeal that judgment, stating every ground of error which it is reasonable to expect that he or his counsel is aware of when the appeal is taken.”); Alvey v. Commonwealth, 648 S.W.2d 858, 860 (Ky.1983) (“[W]e should not afford the defendant a second bite at the apple.”). Moreover, since this is a matter of state procedural law, we defer to the Kentucky Court of Appeal’s conclusion that Peters should have raised this claim on direct appeal. See Israfil v. Russell, 276 F.3d 768, 771 (6th Cir.2001) (“[C]omity require[s] federal courts to defer to a state’s judgment on issues of state law and, more particularly, on issues of state procedural law.”).
Because the four Man pin, prerequisites are met, and because Peters offers nothing to explain why the default of his claim should be excused under the cause and prejudice standard, or to show actual innocence, Peters procedurally defaulted this claim. Hargrave-Thomas v. Yukins, 374 F.3d 383, 387 (6th Cir.2004) (quoting Coleman v. Thompson, 501 U.S. 722, 729-30, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991)).
But even if Peters did not procedurally default this claim, it fails on the merits. Strickland’s familiar two prong test governs: “[T]he defendant must show that the counsel’s performance was deficient” and that the deficiency “prejudiced the defendant.” 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). The defendant’s burden in the case of a guilty plea is the same, except that, to prove the second prong, the defendant must demonstrate that he would have reached a different decision to plead. Hill v. Lockhart, 474 U.S. 52, 59, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985). In determining whether counsel made serious errors, we use a reasonably-effective-assistance standard and “indulge in a strong presumption that counsel’s conduct falls within the wide range of reasonable professional assistance.” Strickland, 466 U.S. at 688-89, 104 S.Ct. 2052.
Peters argues that his counsel did not adequately challenge whether a “serious physical injury” occurred in this case. At the Rule 11.42 hearing, however, attorney Hall testified that he spoke with a medical doctor, and, based on that conversation, concluded that Pierce’s injuries met the statutory definition of a serious physical injury. In his Memorandum in Support of Habeas Corpus, Peters admits Hall informed him that he spoke with a doctor and that the state’s evidence was adequate. The Sixth Amendment does not require perfect performance but permits a “wide range of professionally competent assistance,” especially regarding strategic choices made by “reasonable investigation.” Strickland, 466 U.S. at 690-91, 104 S.Ct. 2052. Hall investigated and, understanding that his client faced a potential life sentence, made a strategic choice informed by that investigation.
Aside from failing on the deficiency prong, Peters’s claim also fails on the prejudice prong. Peters contends that, under Kentucky law, the seriousness of Pierce’s injuries could not support the first-degree *460 charges against him. Kentucky, however, defines first-degree assault as “intentionally causing] serious physical injury to another person by means of a deadly weapon or a dangerous instrument,” or “[ujnder circumstances manifesting extreme indifference to the value of human life ... wantonly engaging] in conduct which creates a grave risk of death to another and thereby causes serious physical injury to another person.” Ky.Rev.Stat. § 508.010. Likewise, a person commits first-degree rape when “[hje engages in sexual intercourse with another person by forcible compulsion,” which is a class A felony when the victim “receives a serious physical injury.” Ky.Rev.Stat. § 510.040. A serious physical injury “creates a substantial risk of death.” Ky.Rev.Stat. § 500.080(15).
Pierce reported that Peters, before raping her, strangled her with a rope until she passed out. Kentucky case law supports the conclusion that this created a substantial risk of death. In Cooper v. Commonwealth, 569 S.W.2d 668, 671 (Ky.1978), a seventy-four-year old rape victim was choked to unconsciousness and bruised, and this injury created the substantial risk of death necessary for first-degree rape. Id.
Accordingly, because Peters procedurally defaulted this claim in state court, and because, in any event, he cannot establish the required deficiency or prejudice, we reject Peters’s claim that he was denied effective assistance of counsel when his counsel failed to obtain expert opinion.
Ill
We affirm the judgment of the district court dismissing Peters’s habeas petition.