**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 08a0549n.06
Filed: September 9, 2008

**No. 06-5873**

**UNITED STATES COURT OF APPEALS**
**FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| JAMES ALLEN PETERS, | ) | |
| | ) | |
| Petitioner-Appellant, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR THE |
| LARRY CHANDLER, Warden, | ) | WESTERN DISTRICT OF KENTUCKY |
| | ) | |
| Respondent-Appellee. | ) | |

Before: SUHRHEINRICH, CLAY and COOK, Circuit Judges.

COOK, Circuit Judge. Petitioner James Allen Peters appeals from the district court's dismissal of his petition for a writ of habeas corpus. Peters is serving a thirty-five year sentence after pleading guilty to first-degree rape and first-degree assault and then unsuccessfully attempting to withdraw his plea. Peters argues: (1) that he was denied effective assistance of counsel at his motion to withdraw his guilty plea; (2) that the trial court should have given him a *Faretta* warning before he argued his motion to withdraw; and (3) that he was denied effective assistance of counsel when his appointed counsel failed to obtain an expert opinion about whether his victim's injuries sufficed to support a first-degree rape charge. Finding no merit in Peters's claims, we affirm.

I

In 1996, Christy Pierce entered a hospital with ligature marks around her neck, wrists, and ankles. Blood was pooling in her eyes. Pierce reported that while she slept, Peters, her roommate, strangled her with a rope until she passed out, tied her feet and hands with tape, and raped her. The examining doctor found blistered hemorrhages in Pierce's conjunctiva (the membrane that lines the eyelids), rope burns around her neck, and petechia (purplish-red spots caused by intradermal hemorrhage) on her neck, face, and eardrums. Her body was bruised, but an examination of her genitalia revealed no bleeding or lacerations.

A Kentucky grand jury charged Peters with first-degree rape and first-degree assault. Upon arraignment, the trial court appointed public defender Thomas Hall to represent Peters; Hall in turn arranged for public defender Anne Hardy to assist him. On the day set for trial, Peters pleaded guilty, accepting the prosecution's recommended thirty-five year sentence on the rape charge and twenty-year sentence on the assault charge, with the sentences to run concurrently. But prior to final sentencing, Peters moved pro se to withdraw his plea, arguing "that it was not knowingly, intelligently and voluntarily entered." Peters also notified the court that his counsel informed him "that they will be unable to represent him in this motion, and thus Defendant . . . requests that the court appoint alternative counsel to represent him at this and all subsequent hearings."

Before a hearing on the motion, Hardy requested to withdraw as Peters's lawyer on the grounds that she recommended to Peters that he enter the plea. The trial court allowed Hardy to withdraw, but only on the condition that Hall remain as Peters's "counsel of record." Peters stood

before the bench and stated no objection to Hardy's withdrawal. In fact, when the court indicated that Hall would continue as counsel, Peters nodded his head in agreement.

The court then asked Peters if he wanted to argue the motion to withdraw himself. Peters replied, "Yes, Your Honor," and addressed the court with Hall by his side. Peters explained that, the week he entered his plea, he was sick with the flu, suffering a fever, chills, and stomach cramps, and unable "to handle intellectually the argument about whether [to] enter a guilty plea." On top of that, Peters alleged that "there were several things told to me . . . that were not correct" and accused his lawyers of incorrectly reporting that one of his primary witnesses had been called to testify for the prosecution and that another was in jail.

The court responded by reviewing events prior to accepting Peters's plea. It reminded Peters of the in-chambers meeting where the court meticulously ascertained that Peters was entering the plea voluntarily, knowingly, and of his free will. The court noted that, in addition to going over the written plea, it explained Peters's rights to him in the presence of counsel and found him competent to enter the plea. In addition, when the court asked Peters if he committed the charged crimes, Peters replied, "I'm guilty, Your Honor." Finally, the court noted that Peters graduated from college and completed some graduate education. In view of these facts, the court overruled Peters's motion. Afterwards, Hall stood at the bench and discussed future proceedings with the court.

Peters then filed a pro se motion for reconsideration, supplying affidavits from two inmates confirming his illness. When Peters appeared with Hall for final sentencing and consideration of this

motion, the court praised Hardy and Hall for doing a "commendable job" representing Peters. As to Peters's motion, the court found that neither an illness nor anything else indicated an inability to knowingly and voluntarily plead guilty. After repeating that Peters admitted guilt, the court overruled his motion to withdraw his plea and sentenced him to thirty-five years for the rape charge and twenty years for the assault charge, as recommended by the plea agreement.

Having exhausted his Kentucky remedies, Peters petitioned for habeas corpus relief under 28 U.S.C. § 2254. The district court dismissed Peters's petition but granted a Certificate of Appealability on two issues, which we expanded to include a third issue. Peters now appeals.

II

We review de novo a district court's judgment denying habeas corpus relief. *Bey v. Bagley*, 500 F.3d 514, 518 (6th Cir. 2007). The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") governs our review because Peters filed his petition after AEDPA's effective date. *Stewart v. Erwin*, 503 F.3d 488, 493 (6th Cir. 2007). AEDPA prohibits habeas relief with respect to any claim adjudicated on the merits in the state courts, unless the adjudication resulted in (1) a decision contrary to, or involving an unreasonable application of, clearly established federal law as determined by the Supreme Court; or (2) a decision based on an unreasonable determination of the facts in light of the evidence presented to the state courts. 28 U.S.C. § 2254(d).

AEDPA's "contrary to" clause allows habeas relief if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law, or decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405 (2000). AEDPA's "unreasonable application" clause, by contrast, allows habeas relief if the state court identifies the correct governing legal principle from the Supreme Court's decisions but unreasonably applies that principle to the facts of the petitioner's case. *Id.* at 413.

In analyzing whether a state court decision is "contrary to" or an "unreasonable application of" clearly established Supreme Court precedent, we only look to the holdings of the Supreme Court's decisions as of the time of the relevant state-court decision. *Lockyer v. Andrade*, 538 U.S. 63, 71–72 (2003); *See also Williams*, 529 U.S. at 412. We also look to courts of appeals' decisions, not as binding precedent, but to inform our analysis of Supreme Court holdings and to determine whether the Supreme Court had clearly established a legal principle. *See Hill v. Hofbauer*, 337 F.3d 706, 716 (6th Cir. 2003). Finally, we presume that the state court's factual findings are correct, unless Peters rebuts that presumption by clear and convincing evidence. *See* 28 U.S.C. § 2254(e)(1); *McAdoo v. Elo*, 365 F.3d 487, 493-94 (6th Cir. 2004).

A.      *Ineffective Assistance of Counsel During Peters's Motion to Withdraw the Guilty Plea*

Peters claims that he was denied effective assistance of counsel during his motion to withdraw when the trial court allowed Hall to remain as counsel. According to Peters, Hall was

placed in the impossible position of advocating his own alleged misconduct or taking a position contrary to that of his client, an actual conflict that precluded Hall from representing Peters.

On direct appeal, the Kentucky Supreme Court rejected this claim, concluding that Peters was not denied the assistance of counsel because the trial court insisted that Hall remain as counsel before permitting Hardy to withdraw and because Hall stood with Peters during the proceeding. The court also found that Hall's representation was not illusory due to any conflict of interest, noting that Peters offered no evidence supporting the misrepresentation charge and made no specific objection to Hall continuing as counsel of record. AEDPA limits our inquiry to determining whether the Kentucky Supreme Court's decision was contrary to, or an unreasonable application of, clearly established federal law as determined by the Supreme Court, and the decision suffices under this standard.

Where a defendant's Sixth Amendment right to counsel attaches, the right is denied when an attorney's actual conflict of interest adversely affects his performance. *See Mickens v. Taylor*, 535 U.S. 162, 166 (2002); *Cuyler v. Sullivan*, 446 U.S. 335, 344 (1980); *see also Whiting v. Burt*, 395 F.3d 602, 611 (6th Cir. 2005) ("[A] [mere] claim of a conflict of interest, by itself, is insufficient to justify reversal of a conviction."). Although Peters posits that a conflict of interest at a hearing on a motion to withdraw a guilty plea deprives a defendant of counsel at a "critical stage" under *Mempa v. Rhay*, 389 U.S. 128, 134 (1967), he fails to rebut the Kentucky Supreme Court's conclusion that Hall's representation was not illusory. Peters's motion to withdraw did not mention

any conflict with Hall; nor did Hall perceive one. Finally, when the trial court allowed Hardy to withdraw while advising Peters that Hall would remain, Peters nodded his head in agreement. DVD of Motion to Withdraw at 11:00:54.

The court, having confirmed the absence of any conflict, then asked Peters if he would like to present the motion to withdraw himself. Peters agreed and argued that illness prevented him from knowingly and intelligently pleading guilty. Although Peters did mention that "several things told to him were not correct," Peters never accused Hall of forcing him to plead or misrepresenting facts. It was only during post-conviction proceedings that Peters first accused his attorneys of coercion. Even then, Peters blamed Hardy, not Hall, for the alleged misrepresentations about the status of two witnesses. And to the extent that Hall failed to act during the motion to withdraw, that worked to respect Peters's decision to argue the motion himself, the consequences of which Peters cannot now escape by pointing to Hall's inactivity. Peters opted for hybrid representation by consenting to Hall remaining as counsel but deciding to argue the motion himself, and this distinguishes this case from those the dissent cites. Moreover, Hall remained at Peters's side, available to consult with Peters before and during the motion.

B.    *The State Trial Court's Failure to Give a* Faretta *Warning*

Peters makes the related complaint that the state trial court violated the principles of *Faretta v. California*, 422 U.S. 806, 835 (1975), by failing to ensure that he waived his right to counsel with his "eyes wide open" before allowing him to argue his motion to withdraw pro se. Appellant's Br.

7

The Kentucky Supreme Court dismissed this claim on direct appeal, finding no reversible error because Peters was never without the assistance of counsel and was therefore not denied his constitutional rights, and because the trial court did not abuse its discretion in rejecting Peters's plea withdrawal.

The Constitution protects a criminal defendant's right to present his own defense and to be represented by counsel. *Faretta*, 422 U.S. at 833–34. When a defendant opts to present his own defense, he waives the right to representation. *Id.* at 835; *see also United States v. Cromer*, 389 F.3d 662, 680 (6th Cir. 2004). A court, therefore, must ensure that waiver is knowing and intelligent. *Faretta*, 422 U.S. at 835. Peters contends the Kentucky Supreme Court impermissibly excused the trial court's failure to do so by finding that he was never without counsel. We disagree.

In *Cromer*, we canvassed federal authority regarding when *Faretta* warnings are required. Noting "conflicting authority," we found that most courts "have held that there is a presumption against a waiver of counsel, and that *Faretta* warnings are only required when a defendant has clearly and unequivocally asserted his right to proceed *pro se*." *See* 389 F.3d at 680-81 (collecting cases). At issue here is a type of hybrid representation similar to that in *Cromer*, where a federal defendant charged with drug trafficking and firearms possession requested permission from the district court to personally cross-examine a witness, even though the defendant had appointed trial counsel. *Id.* at 679-80. The district court allowed this without providing a *Faretta* warning. *Id.* On appeal, the defendant argued that this violated his Sixth Amendment rights because the district court did not

explicitly find that he had knowingly and voluntarily waived his right to counsel. *Id.* We disagreed, holding that because Cromer never "clearly and unequivocally" asked to proceed pro se, the court was not required to secure a waiver of his right to counsel before permitting him to cross-examine the witness. *Id.* at 682-83 (acknowledging that, in hybrid representation cases, some courts require *Faretta* warnings before defendant assumes "core functions" of counsel).

Peters made no clear and unequivocal demand to proceed pro se. Instead, his motion to withdraw his plea requested appointment of counsel, and when the trial court indicated to him that Hall would remain his lawyer, Peters nodded his head in agreement. And while Peters spoke with the court directly about his motion to withdraw his guilty plea, Hall remained for all other purposes: Hall conversed with the court immediately after Peters's argument, represented Peters through the judgment of conviction, filed a notice of appeal, and sent Peters's case to the Department of Public Advocacy. As no clearly established Supreme Court precedent required a *Faretta* warning in these circumstances, the Kentucky Supreme Court's decision was not unreasonable.

C.     *Counsel's Failure to Obtain Expert Opinion*

In his post-conviction proceedings, Peters argued that trial counsel should have sought expert opinion about whether Pierce's injuries sufficed to support the charges against him. The Kentucky Court of Appeals refused to consider this claim on its merits, reasoning Peters should have raised it in his direct appeal. The court conceded that "it is somewhat unusual for a defendant to challenge trial counsel's performance on direct appeal," but emphasized that "Peters did so" and therefore

should have "[made] that challenge as thorough as he could." The district court disagreed with this procedural default analysis but still denied relief on the merits.

We find that Peters procedurally defaulted this claim. In making this determination, we use the *Maupin v. Smith* factors: (1) is there an applicable state procedural rule?; (2) did petitioner fail to comply with that rule?; (3) was the rule actually enforced in petitioner's case?; and (4) is the state procedural forfeiture an adequate and independent state ground on which the state can rely to foreclose review of a federal constitutional claim? 785 F.2d 135, 138 (6th Cir. 1986).

Prongs (1) and (3) are met because the Kentucky Court of Appeals explicitly refused to consider Peters's new claim after finding that he failed to comply with a state procedural rule when he raised some ineffective assistance claims on direct appeal, and then attempted to raise others in his post-conviction proceedings. Prong (4) is also satisfied because we hold (albeit in unpublished opinions) that the procedural bar set forth in Kentucky post-conviction proceedings constitutes an adequate and independent state law ground. *Wilson v. Webb*, 107 F. App'x 516, 518 (6th Cir. 2004) ("Rule 11.42 is an adequate and independent ground foreclosing review of a petitioner's habeas claim."); *see also Hardin v. Chandler*, 36 F.App'x 769, 771 (6th Cir. 2002).

Prong (2)—failure to comply with the state rule—is also satisfied. Kentucky Rule of Criminal Procedure 11.42 prohibits post-conviction relief grounded upon issues "which could and should have been raised" on direct appeal. *Thacker v. Commonwealth*, 476 S.W.2d 838, 839 (Ky. 1972). Although a post-conviction Rule 11.42 motion is ordinarily the "appropriate avenue" to

claim ineffective assistance, *Osborne v. Commonwealth*, 992 S.W.2d 860, 863 (Ky. Ct. App. 1998), when a criminal defendant opts to raise this on direct appeal, Kentucky limits a later 11.42 motion "alleging ineffective assistance of counsel at the original trial. . . . to the issues that were not and could not be raised on direct appeal." *Haight v. Commonwealth*, 41 S.W.3d 436, 441 (Ky. 2001).

The question, then, is whether Peters could have raised this claim on direct appeal, and we find that he could. Peters knew the relevant facts before advancing his direct appeal. At his Rule 11.42 evidentiary hearing, Peters admitted, "I tried to tell [Hall and Hardy] again and again that I felt we needed a doctor to testify on . . . whether or not this was a serious physical injury," and "[I] told [Hall] several times that something was messed up" with the prosecution's allegedly mixed-up forensic report on the injuries. Thus, Peters recognized the allegedly egregious act of counsel prior to his direct appeal, and, since Peters otherwise made counsel's performance an issue on direct appeal, the state court appropriately barred him from raising it in post-conviction proceedings. *See Gross v. Commonwealth*, 648 S.W.2d 853, 857 (Ky. 1983) (holding "the proper procedure for a defendant aggrieved by a judgment in a criminal case is to directly appeal that judgment, stating every ground of error which it is reasonable to expect that he or his counsel is aware of when the appeal is taken."); *Alvey v. Commonwealth*, 648 S.W.2d 858, 860 (Ky. 1983) ("[W]e should not afford the defendant a second bite at the apple."). Moreover, since this is a matter of state procedural law, we defer to the Kentucky Court of Appeal's conclusion that Peters should have raised this claim on direct appeal. *See Israfil v. Russell*, 276 F.3d 768, 771 (6th Cir. 2001) ("[C]omity require[s]

federal courts to defer to a state's judgment on issues of state law and, more particularly, on issues of state procedural law.").

Because the four *Maupin* prerequisites are met, and because Peters offers nothing to explain why the default of his claim should be excused under the cause and prejudice standard, or to show actual innocence, Peters procedurally defaulted this claim. *Hargrave-Thomas v. Yukins*, 374 F.3d 383, 387 (6th Cir. 2004) (quoting *Coleman v. Thompson*, 501 U.S. 722, 729–30 (1991)).

But even if Peters did not procedurally default this claim, it fails on the merits. *Strickland*'s familiar two prong test governs: "[T]he defendant must show that the counsel's performance was deficient" and that the deficiency "prejudiced the defendant." 466 U.S. 668, 687 (1984). The defendant's burden in the case of a guilty plea is the same, except that, to prove the second prong, the defendant must demonstrate that he would have reached a different decision to plead. *Hill v. Lockhart*, 474 U.S. 52, 59 (1985). In determining whether counsel made serious errors, we use a reasonably-effective-assistance standard and "indulge in a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 688-89.

Peters argues that his counsel did not adequately challenge whether a "serious physical injury" occurred in this case. At the Rule 11.42 hearing, however, attorney Hall testified that he spoke with a medical doctor, and, based on that conversation, concluded that Pierce's injuries met the statutory definition of a serious physical injury. In his Memorandum in Support of Habeas Corpus, Peters admits Hall informed him that he spoke with a doctor and that the state's evidence

was adequate. The Sixth Amendment does not require perfect performance but permits a "wide range of professionally competent assistance," especially regarding strategic choices made by "reasonable investigation." *Strickland*, 466 U.S. at 690–91. Hall investigated and, understanding that his client faced a potential life sentence, made a strategic choice informed by that investigation.

Aside from failing on the deficiency prong, Peters's claim also fails on the prejudice prong. Peters contends that, under Kentucky law, the seriousness of Pierce's injuries could not support the first-degree charges against him. Kentucky, however, defines first-degree assault as "intentionally caus[ing] serious physical injury to another person by means of a deadly weapon or a dangerous instrument," or "[u]nder circumstances manifesting extreme indifference to the value of human life . . . wantonly engag[ing] in conduct which creates a grave risk of death to another and thereby causes serious physical injury to another person." Ky. Rev. Stat. § 508.010. Likewise, a person commits first-degree rape when "[h]e engages in sexual intercourse with another person by forcible compulsion," which is a class A felony when the victim "receives a serious physical injury." Ky. Rev. Stat. § 510.040. A serious physical injury "creates a substantial risk of death." Ky. Rev. Stat. § 500.080(15).

Pierce reported that Peters, before raping her, strangled her with a rope until she passed out. Kentucky case law supports the conclusion that this created a substantial risk of death. In *Cooper v. Commonwealth*, 569 S.W.2d 668, 671 (Ky. 1978), a seventy-four-year old rape victim was choked

13

to unconsciousness and bruised, and this injury created the substantial risk of death necessary for first-degree rape. *Id.*

Accordingly, because Peters procedurally defaulted this claim in state court, and because, in any event, he cannot establish the required deficiency or prejudice, we reject Peters's claim that he was denied effective assistance of counsel when his counsel failed to obtain expert opinion.

III

We affirm the judgment of the district court dismissing Peters's habeas petition.

**CLAY, Circuit Judge, dissenting.** I agree with the majority that Petitioner, James Allen Peters ("Peters"), procedurally defaulted his claim that his trial counsel were ineffective in failing to obtain expert medical assistance to assess whether the evidence supported his conviction for first degree assault. I also agree that *Faretta v. California*, 422 U.S. 806 (1975) is inapplicable in this case because Peters was not seeking to represent himself *pro se*, but rather was requesting the assistance of counsel. However, I cannot join the majority in concluding that Peters was not deprived of his right to counsel during a critical stage of his criminal proceedings. Because I find that Peters was deprived entirely of the assistance of counsel during his plea withdrawal hearing and because the Kentucky trial court failed to appoint substitute counsel for Peters during that hearing, I am convinced that Peters' Sixth Amendment right to counsel has been infringed and that Peters therefore is entitled to the requested writ of habeas corpus. Accordingly, I respectfully dissent.

## I.

In as much as the majority opinion has failed to fully explain the background of this case, I find it necessary to provide the following additional facts:

On August 21, 1996, Peters was charged in Nelson County Circuit Court with one count of first degree rape, pursuant to Ky. Rev. Stat. Ann. § 510.040 (2006), and one count of first degree assault, pursuant to Ky. Rev. Stat. Ann. § 508.010, for the alleged rape and assault of Christy Pierce, Peters' expense sharing roommate, on July 22, 1996. Upon Peters' arraignment on the charges, the circuit court appointed a local contract public defender, Thomas Hall ("Hall") to represent Peters.

15

Hall arranged for another contract public defender, Anne P. Hardy ("Hardy"), to assist in the representation of Peters.

After the entry of Peters' initial plea of not guilty, the case was set for trial on February 27, 1997. On that date, Peters, following the advice of counsel, filed a motion to change his plea. Peters then pled guilty to both of the counts in the indictment in return for the Commonwealth's agreement to recommend concurrent sentences of thirty-five years imprisonment for the rape charge and twenty years imprisonment for the assault charge, for a total sentence of thirty-five years imprisonment.

On March 10, 1997, Peters filed a *pro se* motion to withdraw his guilty plea which read as follows:

> Comes now, the Defendant, JAMES ALLEN PETERS, pro se, and respectfully requests the permission of this honorable Court to withdraw his guilty plea entered on February 28, 1997, on the grounds that it was not knowingly, intelligently, and voluntarily entered.
>
> The Defendant has been informed by his counsel, Hon. Tom Hall and Hon. Anne Hardy, that they will be unable to represent him in this motion, and thus Defendant additionally requests that the court appoint alternative counsel to represent him at this and all subsequent hearings.

J.A. on 180. Two days later, on March 12, 1997, Hardy filed a written motion to withdraw as appointed co-counsel because of her prior role in advising Peters to enter a guilty plea on both counts.

On March 20, 1997, the circuit court held a hearing on Peters' *pro se* motion to withdraw his guilty plea. At this hearing, Hardy orally presented her motion to withdraw as Peters' counsel. After Peters indicated that he did not have any objection to the motion, the court granted Hardy's motion to withdraw on the condition that Hall remain in the case as Peters' "counsel of record." Contrary to what the majority asserts, the tape recording of this hearing does not reveal that Peters affirmatively assented to Hall remaining as "counsel of record." Rather, Peters remained silent during this encounter and appears to have been unaware of what Hall's presence as "counsel of record" might have meant.

Without confirming whether Peters really did consent to Hall's presence as counsel of record, the circuit court judge proceeded to consider Peters' *pro se* motion to withdraw his guilty plea. The judge reviewed the written *pro se* motion and then asked Peters if he wished to present the motion on his own. The judge did not inform Peters of the consequences of arguing his motion by himself or that Peters had the right to counsel's assistance in the presentation of his motion. Peters indicated that he would like to present his arguments, and proceeded to do so with Hall standing silently nearby. In presenting his motion, Peters argued that his guilty plea was not knowing, intelligent and voluntary because: (1) he was unable to intellectually handle the decision at the time it was entered due to illness; and (2) he had been misinformed by counsel, both Hall and Hardy, about the unavailability of certain witnesses whom Peters had hoped would be able to testify on his behalf. In particular, Peters argued that had he not been misinformed by counsel he would not have changed his plea to guilty. After hearing from Peters and without any comments or arguments offered by

Hall, the judge denied Peters' motion to withdraw his guilty plea. The record does not indicate that Hall consulted with or offered any statements on behalf of Peters at any point during the hearing.

On April 1, 1997, Peters filed a *pro se* motion for reconsideration in which he presented the same arguments that he had presented at the plea withdrawal hearing. The circuit court denied the motion for reconsideration and proceeded to sentence Peters on April 3, 1997. Following the Commonwealth's recommendation, the court sentenced Peters to concurrent terms of thirty-five years and twenty years imprisonment for the rape and assault charges respectively.

Peters then appealed the circuit court's denial of his plea withdrawal motion to the Kentucky Supreme Court arguing that he had been denied his Sixth Amendment right to counsel when presenting his motion. On February 19, 1998, the Kentucky Supreme Court affirmed the judgment of the circuit court finding Peters' Sixth Amendment claim to lack merit.

Following the failure of his direct appeal, on April 27, 1999, Peters filed a *pro se* motion in the Nelson County Circuit Court to vacate his conviction and sentence pursuant to Kentucky Rule of Criminal Procedure 11.42. In his motion, Peters argued that his trial counsel had committed numerous errors thereby depriving him of his Sixth Amendment right to effective assistance of counsel. After appointing new counsel to represent Peters on the motion and after conducting an evidentiary hearing with regard to it, the circuit court denied Peters' motion to vacate his conviction and sentence on September 6, 2000, finding Peters' claims to be both meritless and procedurally defaulted by his failure to raise them in his direct appeal. On October 26, 2001, the Kentucky Court

of Appeals affirmed the circuit court's denial of the motion on the procedural ground. *Id*. at 286-89.

The Kentucky Supreme Court denied Peters' subsequent request for discretionary relief. *Id*. at 189.

Having exhausted the available avenues of state post-conviction relief, on March 3, 2003, Peters filed a *pro se* petition for a writ of habeas corpus, pursuant to 28 U.S.C. § 2254, in the United States District Court for the Western District of Kentucky, alleging ten grounds for relief. On April 13, 2006, the magistrate judge issued a report containing findings of fact and law and a recommendation that the district court deny the petition because none of Peters' claims had merit. After considering Peters' objections to this report and recommendation, the district court adopted the magistrate judge's report in full and entered an order denying the petition. The district court, however, granted Peters a certificate of appealability on the issue of whether he was deprived of his Sixth Amendment right to counsel during the presentation of his motion to withdraw his guilty pleas. This timely appeal followed.

## II.

When evaluating a habeas appeal, we review the district court's legal conclusions, including its denial of a writ of habeas corpus *de novo* while evaluating its factual conclusions for clear error. *Girts v. Yanai*, 501 F.3d 743, 752 (6th Cir. 2007). As revised by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214 (Apr. 24, 1996), the federal habeas statute for review of state court judgments, 28 U.S.C. § 2254, provides that:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim: (1) resulted in a decision that was contrary to or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of facts in light of the evidence presented in the State Court proceeding.

28 U.S.C. § 2254(d) (2000).  Under this standard, a decision is "contrary to" clearly established federal law as determined by the Supreme Court if "the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts."  *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000).  A decision involves an "unreasonable application" of clearly established federal law if a "state court identifies the correct governing legal rule from [the Supreme Court's] cases but unreasonably applies it to the facts of the particular state prisoner's case," *id.* at 407, or if it "either unreasonably extends or unreasonably refuses to extend a legal principle from Supreme Court precedent to a new context." *Seymour v. Walker*, 224 F.3d 542, 549 (6th Cir. 2000) (citing *Williams*, 529 U.S. at 407).  That is, the federal habeas court "should ask whether the state court's application of clearly established federal law was objectively unreasonable." *Williams*, 529 U.S. at 409.

**III.**

A.

20

The Sixth Amendment guarantees that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence." U.S. CONST. amend. VI. In *Gideon v. Wainwright*, the Supreme Court held that this Sixth Amendment right to counsel is extended to criminal defendants in state court through the Due Process clause of the Fourteenth Amendment. 372 U.S. 335, 342-43 (1963). In interpreting this Sixth and Fourteenth Amendment guarantee, the Supreme Court has long recognized that, because "the right to counsel exists, and is needed to protect the fundamental right to a fair trial," *Strickland v. Washington*, 466 U.S. 668, 684 (1984), this right entitles an accused "to be assisted by an attorney, whether retained or appointed, who plays the role necessary to ensure that the trial is fair." *Id*. at 685. In other words, "the right to counsel is the right to effective assistance of counsel." *Id*. at 686 (quoting *McMann v. Richardson*, 397 U.S. 759, 771 n.14 (1970)). Accordingly, in order to demonstrate a violation of this constitutionally protected right, a habeas petitioner must show that his counsel's assistance during the course of his criminal proceedings was so ineffective that it undermined the proper functioning of the adversarial process. *Id*. at 686; *see also Wright v. Van Patten*, 128 S. Ct. 743, 746 (2008) (per curiam); *United States v. Gonzales-Lopez*, 548 U.S. 140, 146-49 (2006).

To determine whether a habeas petitioner has made this ineffectiveness showing, we generally apply the two-part test announced by the Supreme Court in *Strickland*. *See Wright*, 128 S. Ct. at 746; *Florida v. Nixon*, 543 U.S. 175, 190 (2004); *Bell v. Cone*, 535 U.S. 685, 695-698 (2002); *Smith v. Robbins*, 528 U.S. 259, 287 (2000); *Hill v. Lockhart*, 474 U.S. 52, 58 (1985). This *Strickland* standard requires the petitioner to demonstrate that: (1) counsel's representation was

deficient, *i.e.*, it fell below an objective standard of reasonableness; and (2) the petitioner was prejudiced by counsel's deficient performance, *i.e.*, it is reasonably probable that the result of the proceeding would have been different but for counsel's errors.  466 U.S. at 688, 694.

In certain egregious circumstances, however, where the representation by counsel has effectively been denied altogether, we do not require a petitioner to demonstrate prejudice in order to prevail on an ineffectiveness claim.  *See*, *e.g.*, *Wright*, 128 S. Ct. at 746.  In particular, in *United States v. Cronic*, 466 U.S. 648 (1984), which was decided on the same day as *Strickland*, the Supreme Court "identified three situations implicating the right to counsel that involved circumstances 'so likely to prejudice the accused that the cost of litigating their effect in a particular case is unjustified.'" *Bell*, 535 U.S. at 695 (quoting *Cronic*, 466 U.S. at 658); *see also Nixon*, 543 U.S. at 190.  These three situations, as explained by *Cronic* and its progeny, are: (1) the "complete denial of counsel" during "a critical stage" of the criminal proceeding, *Cronic*, 466 U.S. at 659; *accord Wright*, 128 S. Ct. at 746; *Bell*, 535 U.S. at 695; (2) counsel's "fail[ure] to subject the prosecution's case to meaningful adversarial testing," *Cronic*, 466 U.S. at 659; *accord Wright*, 128 S. Ct. at 746 n.1; *Bell*, 535 U.S. at 695; and (3) representation by counsel who is "burdened by an actual conflict of interest," *Smith*, 528 U.S. at 287 (quoting *Strickland*, 466 U.S. at 692); *accord Mickens v. Taylor*, 535 U.S. 162, 173-74 (2002).  *See also Ivory v. Jackson*, 509 F.3d 284, 294 (6th Cir. 2007) (listing the three types of cases that lead to a presumption of prejudice); *Mitchell v. Mason*, 325 F.3d 732, 742 (6th Cir. 2003) (same).  In such situations, "a Sixth Amendment violation may be found 'without inquiring into counsel's actual performance or requiring the defendant to

22

show the effect it had on the trial.'" *Wright*, 128 S. Ct. at 746 (quoting *Bell v. Cone*, 535 U.S. at 695); *see also Van v. Jones*, 475 F.3d 292, 308 (6th Cir. 2007) (identifying the situations in which *Cronic* prevails and noting that "*Cronic* was meant to cover those cases in which prejudice was to be assumed [whereas] *Strickland* would address cases in which prejudice needed to be shown").

In the instant case, the Kentucky Supreme Court appropriately used the *Cronic* standard in assessing Peters' claim that he was deprived of the assistance of counsel during the presentation of his motion to withdraw his guilty pleas. However, the Kentucky Supreme Court unreasonably applied *Cronic* to the facts of Peters' case. In particular, the Kentucky Supreme Court unreasonably concluded that Peters was not deprived of counsel during a critical stage of his trial and that Hall was not subject to an actual conflict of interest while serving as the counsel of record during the motion hearing. Because the Kentucky Supreme Court unreasonably applied *Cronic* to Peters' case and because the record demonstrates that Peters was, in fact, deprived of the assistance of counsel during his plea withdrawal hearing, I would grant Peters the requested writ of habeas corpus.

B.

Under Supreme Court precedent, "[a]ctual or constructive denial of the assistance of counsel altogether is legally presumed to result in prejudice." *Strickland*, 466 U.S. at 692; *accord Cronic*, 466 U.S. at 659 ("The presumption that counsel's assistance is essential [for a fair trial] requires us to conclude that a trial is unfair if the accused is denied counsel at a critical stage of his trial."); *see also Van*, 475 F.3d at 311-12 ("It is settled that a complete absence of counsel at a critical stage of

23

a criminal proceeding is a *per se* Sixth Amendment violation warranting reversal of a conviction, a sentence, or both, as applicable without analysis for prejudice or harmless error."). The Supreme Court has indicated that such denial of counsel occurs "when counsel [is] either totally absent, or prevented from assisting the accused during a critical stage of the proceeding." *Cronic*, 466 U.S. at 659 n.25. While counsel's physical absence during a critical stage certainly constitutes denial of counsel, *see*, *e.g.*, *Hamilton v. Alabama*, 368 U.S. 52, 55 (1961), a defendant may also be denied counsel when a physically present attorney cannot or will not assist the accused. *See*, *e.g.*, *Geders v. United States*, 425 U.S. 80, 96 (1976) (finding denial of right to counsel when trial court order prevented the defendant from consulting counsel about anything during an overnight recess between his direct and cross examinations); *Herring v. New York*, 422 U.S. 853, 859-63 (1975) (finding denial of right to counsel when trial judge denied counsel the opportunity to present a closing argument); *Burdine v. Johnson*, 262 F.3d 336, 349 (5th Cir. 2001) (finding denial of assistance of counsel when counsel was sleeping during portions of the defendant's trial); *Javor v. United States*, 724 F.2d 831, 834 (9th Cir. 1984) (same).

Moreover, although the Kentucky Supreme Court suggested otherwise in its opinion, a plea withdrawal hearing is undoubtedly a critical stage in a criminal proceeding. *See United States v. Segarra-Rivera*, 473 F.3d 381, 384 (1st Cir. 2007); *United States v. Davis*, 239 F.3d 283, 286 (2d Cir. 2001) ("It cannot be gainsaid that a defendant's guilty plea is the most critical stage of the proceeding as it forecloses his very right to a trial. Consequently, in the face of an allegedly involuntary plea, a plea withdrawal hearing is vital to ensuring the integrity of the process by which

guilt may ultimately be determined."); *United States v. Sanchez-Barreto*, 93 F.3d 17, 20 (1st Cir. 1996); *United States v. Crowley*, 529 F.2d 1066, 1069 (3d Cir.), *cert. denied*, 425 U.S. 995 (1976); *see also Wright*, 128 S. Ct. at 748 (Stevens, J., concurring) ("It is well-settled that a court proceeding in which a defendant enters a plea . . . is a 'critical stage' where an attorney's presence is crucial because 'defenses may be . . . irretrievably lost, if not then and there asserted.' (citation omitted)); *Nixon*, 543 U.S. at 187 ("A guilty plea . . . is an event of signal significance in a criminal proceeding. By entering a guilty plea, a defendant waives constitutional rights that inhere in a criminal trial, including the right to trial by jury, the protection against self-incrimination, and the right to confront one's accusers.").

Unlike the majority, I find that Peters was effectively denied counsel during his plea withdrawal hearing—a critical stage in the court's determination of Peters' guilt. While Hall technically remained as "counsel of record" during the plea withdrawal hearing, he neither served as counsel in any way nor appeared willing to do so. On the contrary, prior to the hearing, Hall informed Peters that he would "be unable to represent" Peters on the motion. J.A. at 180. During the hearing, he similarly offered no assistance to Peters. Hall presented no arguments on Peters' behalf, and Peters never consulted with Hall about the arguments he was presenting. Indeed, it is not clear that Peters was even aware that he could consult with Hall. The judge asked Peters: "It says here that you want to present this on your own, is that correct?" Trial Tape 6 at 11:01:46. When Peters answered in the affirmative, rather than informing Peters that he could employ his counsel of record, the judge simply asked Peters: "Is there anything you want to add?" Trial Tape 6 at 11:01:49.

Peters then proceeded to present his argument without ever consulting Hall, who likewise never offered to help his "client."

On these facts, I am convinced that Peters was "constructive[ly] deni[ed] the assistance of counsel altogether," *Strickland*, 466 U.S. at 492, and was thus deprived of his Sixth Amendment right to counsel. The Kentucky Supreme Court's failure to reach this conclusion was not only an objectively unreasonable application of *Cronic*, but was also premised on an unreasonable determination of the facts in light of the evidence presented. In its review of Peters' conviction on direct appeal, the Kentucky Supreme Court found that Peters was not denied the assistance of counsel because Hall "stood with him during the entire proceeding and conferred with him both before and during the motion, even interjecting twice on his behalf." J.A. at 129. The tape recording of this motion hearing, however, does not demonstrate that Hall ever consulted with Peters or offered *any* statements, let alone arguments, on Peters' behalf. This tape recording is sufficiently "clear and convincing" to rebut the presumption of correctness that we generally afford state court determinations of fact. 28 U.S.C. § 2254(e)(1).

Accordingly, I would find that Peters is entitled to a writ of habeas corpus on this ground alone. Nevertheless, even if the majority were correct that Peters was technically represented by counsel—namely, Hall, who was serving as "counsel of record"—at his plea withdrawal hearing, I would still find that Peters is entitled to relief because Hall would have been subject to an actual conflict of interest, rendering him unable to effectively represent Peters, during the hearing.

26

C.

It is clearly established federal law that a defendant's Sixth Amendment right to counsel is violated "when counsel is burdened by an actual conflict of interest." *Strickland*, 466 U.S. at 692; *accord Cuyler v. Sullivan*, 446 U.S. 335, 349-50 (holding that "a defendant who shows that a conflict of interest actually affected the adequacy of his representation need not demonstrate prejudice in order to obtain relief"); *Fautenberry v. Mitchell*, 515 F.3d 614, 628 (6th Cir. 2008) ("[A] habeas petitioner can establish an ineffective-assistance claim without having to show prejudice if he demonstrates that his counsel labored under an 'actual conflict' of interest.'"). To obtain relief on such grounds, a defendant must "establish that an actual conflict of interest adversely affected his lawyer's performance." *Cuyler*, 446 U.S. at 350; *accord Mickens*, 535 U.S. at 171 n.5 ("An 'actual conflict,' for Sixth Amendment purposes, is a conflict of interest that adversely affects counsel's performance."); *Fautenberry*, 515 F.3d at 628.

Actual conflicts of interest may arise from counsel's representation of different parties with competing interests, *see*, *e.g.*, *Woods v. Georgia*, 450 U.S. 261, 273 (1981); *Holloway v. Arkansas*, 435 U.S. 475, 485-90 (1978); *Glasser v. United States*, 315 U.S. 60, 72-75 (1942), or from counsel's representation of a client whose interests are at odds with counsel's own. *See*, *e.g.*, *United States v. Hurt*, 543 F.2d 162, 166 (D.C. Cir. 1976) ("To be sure, most conflicts of interest arise out of a lawyer's dual representation of co-defendants, but the constitutional principle is not narrowly confined to instances of that type. . . . Competition between the client's interests and counsel's own

27

interests plainly threatens that result, and we have no doubt that the conflict corrupts the relationship when counsel's duty to his client calls for a course of action which concern for himself suggests that he avoid."). In particular, "[c]ourts have recognized actual conflicts of interest between an attorney and his client when pursuit of a client's interests would lead to evidence of an attorney's malpractice." *United States v. Soldevila-Lopez*, 17 F.3d 480, 486 (1st Cir. 1994); *see also United States v. Davis*, 239 F.3d 283, 286-87 (2d Cir. 2001) (finding actual conflict of interest created when the defendant argued in his *pro se* plea withdrawal motion that counsel coerced the defendant to plead guilty by threatening not to investigate his case); *United States v. Sanchez-Barretto*, 93 F.3d 17, 20-21 (1st Cir. 1996) (finding an actual conflict of interest when the defendant's *pro se* motion to withdraw plea alleged that counsel had coerced the defendant to plead guilty in order to conceal his unpreparedness for trial); *Lopez v. Scully*, 58 F.3d 38, 41 (2d Cir. 1995) (finding an actual conflict of interest when the defendant's *pro se* motion to withdraw a guilty plea was based on alleged attorney coercion); *United States v. Ellison*, 798 F.2d 1102, 1106 (7th Cir. 1986) (same).

In the instant case, any representation that Hall may have provided Peters at the plea withdrawal hearing would have been adversely affected by an actual conflict of interest. A key part of Peters' argument in support of his plea withdrawal motion was his allegation that his attorneys, Hall and Hardy, had provided him with inaccurate information when advising him to plead guilty. If true, such an allegation would at minimum show deficient performance by Hall and at worst demonstrate legal malpractice. Thus, Hall's continued representation of Peters, who was presenting such arguments, would have created an actual conflict of interest. *See Davis*, 239 F.3d at 287 (noting

28

that defendant's allegations that his attorney had threatened not to investigate the case if defendant did not plead guilty "placed his attorney in the position of having to defend himself, and potentially to contradict [the defendant], in open court").

Moreover, the record reflects that this actual conflict of interest did, in fact, adversely affect Hall's performance as "counsel of record." Prior to the plea withdrawal hearing, Hall informed Peters that he would "be unable to represent him in this motion." J.A. at 180. Hall then followed through on this promised lack of representation by failing to consult with Peters about the motion and by remaining silent during the entire plea withdrawal hearing. In failing to act as counsel in any meaningful way at the plea withdrawal hearing, Hall clearly was affected by the actual conflict of interest. *See Davis*, 239 F.3d at 287 (finding that "[d]efense counsel's silence at [the plea withdrawal motion] stage of the proceedings illustrates his actual conflict.")

Accordingly, even if I were to accept the majority's erroneous contention that Hall's presence as counsel of record means that Peters was afforded the assistance of counsel during the plea withdrawal hearing, I would still find that Peters was denied effective assistance of counsel at this hearing because his only counsel of record was subject to an actual conflict of interest that adversely affected counsel's performance. The Kentucky Supreme Court's contrary determination on this point was not only an incorrect, but an unreasonable application of the Supreme Court's conflict of interest jurisprudence. Thus, Peters, who is being held in state custody in violation of his Sixth Amendment right to counsel, should be granted his requested writ of habeas corpus.

**IV.**

For the foregoing reasons, I respectfully dissent.