Vernon MOUNCE, Appellant,

v.

COMMONWEALTH of Kentucky, Appellee.

No. 88–SC–730–MR.

Supreme Court of Kentucky.

Sept. 6, 1990.

John R. Halstead, Danville, and Barbara M. Holthaus, Dept. of Public Advocacy, Frankfort, for appellant.

Frederic J. Cowan, Atty. Gen., John S. Gillig, and Denise A. Garrison, Asst. Attys. Gen., Frankfort, for appellee.

STEPHENS, Chief Justice.

Appellant was convicted of one count of first-degree sodomy, one count of first-degree sexual abuse, and one count of second-degree sexual abuse, in incidents involving his two 13–year–old stepdaughters. He was sentenced to 15 years on the first count, five years on the second count, to run consecutively, and to one year on the final count, to run concurrently with the first two counts, for a total of 20 years. Appellant appeals his conviction as a matter of right.

The appellant raises four allegations of error. We find that two of these allegations constitute reversible error and therefore reverse and remand for a new trial.

The first basis for reversal involves issues of discoverability and admissibility of evidence. Appellant was accused of committing the acts in question between June 20, 1986, and July 4, 1986. A social worker employed by the Cabinet for Human Resources interviewed the girls on August 28,

1986. The Commonwealth subpoenaed the social worker to trial, and she arrived with a written report in hand. The Commonwealth then decided not to use her as a witness and attempted to send her away. When defense counsel saw what was transpiring, she stopped the social worker, questioned her, and then became aware of the report. The defense was first able to examine this report after the close of the Commonwealth's case. The Commonwealth claims that it did not know of the report until the day of the trial.

Defense counsel called the social worker to the stand to describe the interview she conducted with the alleged victims. The Commonwealth objected, arguing that the oral testimony and the written report were hearsay, and that the report could not be used for impeachment because no foundation had been laid. The trial judge sustained the objection and refused defense counsel's request to recall the prosecuting witnesses in order to lay the proper foundation. The social worker's testimony and report were entered into the record by avowal. The report contained a number of inconsistencies with the statements made by the prosecuting witnesses during their testimony at trial.

We find that the combined actions of the Commonwealth in failing to comply with a discovery order, and the trial judge in denying defense counsel the opportunity to lay the foundation to impeach amount to reversible error.

■ Looking first at the discovery issue, the record shows that the trial court issued an order on April 14, 1988, four months before trial, granting the defense the right to inspect:

"7. [A]ny and all exculpatory evidence, including evidence in mitigation, now known to the Commonwealth, or which may become known, or through the exercise of due diligence may be learned from the investigating officers or witnesses in this case. *Brady v. Maryland* (citation omitted); *U.S. v. Bagley* (citation omitted).... This request includes, but is not limited to the following:

. . . .

C. All records of the Cabinet of Human Resources or the equivalent Ohio agency ... regarding (the alleged victims).

. . . .

E. [E]vidence or information which may be used to impeach any Commonwealth witness or which may lead to evidence which might be used to impeach any witness. *See U.S. v. Bagley* (citation omitted).

F. Disclosure of any statements of any individuals, including children and/or their foster parents, which may be inconsistent, in whole or in part, with any other statements made by the same individuals and any statements made by any individuals which are inconsistent, in whole or in part, with any statements made by other individuals who have given statements relevant to the charges against the defendant;

. . . .

H. [A]ny other matter which would affect the credibility of the Commonwealth's witnesses.... It also includes any reports and/or statements by any witness or agent for the Commonwealth which are exculpatory or tend to be exculpatory in nature, including any taped, oral, or written statement, any record or report, or any other information."

The Commonwealth argues that there was no violation of discovery because it did not know of the existence of the report until the morning of the trial; that the report, at any rate, was nondiscoverable under Kentucky's rules of criminal procedure; and that the report was not exculpatory. We find these arguments to be without merit.

The record shows that the Commonwealth was under a continuing discovery order. The record also reveals that the prosecutor did not alert the trial court or defense counsel to the existence of the report once he became aware of it. Thus, the Commonwealth's claim that it did not know of the report until the morning of trial is no defense at all.

During a conference with the court, the prosecutor stated that "I elected not to call (the social worker) because anything that

she would testify would obviously be objectionable as hearsay evidence and would not, in my opinion, have been admissible.... They (defense counsel) couldn't have used her testimony directly from that report because it would have been inadmissible hearsay." The Commonwealth is confusing discoverability of evidence with its admissibility. Admissibility issues aside, the Commonwealth was under a continuing court order to provide certain evidence to the defense, which it failed to do.

■ The Commonwealth next argues that the report was nondiscoverable under Kentucky's rules of criminal procedure. The record shows that the Commonwealth did not object to the defense's discovery motion, which included a specific request for CHR records. If the Commonwealth thought that CHR reports were not discoverable under RCr 7.24(2) or 7.26, as it now claims, its failure to object at the time the discovery motion was made waives this collateral attack. *Cf. Gullett v. McCormick*, Ky., 421 S.W.2d 352, 354 (1967).

■ The Commonwealth's final contention is that the social worker's report is not "exculpatory," as that word is defined in *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), and discussed in *Sweatt v. Commonwealth*, Ky., 550 S.W.2d 520 (1977). This argument is superfluous, since the Commonwealth was bound by the trial court's order to provide any and all CHR records to defense counsel.

■ Without deciding whether the report is exculpatory, we note that the Commonwealth states in its brief that the primary value of the report was to impeach the prosecuting witnesses, not to exculpate the appellant. However, impeachment evidence as well as exculpatory evidence can constitute evidence favorable to an accused that must be disclosed under *Brady*. *U.S. v. Bagley*, 473 U.S. 667, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985). And again we refer to the trial court's discovery order, which compelled production of impeaching as well as exculpatory material.

■ We turn now to the trial judge's refusal to allow defense counsel to lay the necessary foundation. It is well established that the right to cross examine a witness to impeach his or her credibility is fundamental to a fair trial. *Davis v. Alaska*, 415 U.S. 308, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974). One method of impeachment is to show that on other occasions the witness has made statements inconsistent with his or her testimony at trial. *See* R. Lawson, *Kentucky Evidence Law Handbook*, § 4.10, at 93 (2d ed. 1984).

Evidence of these inconsistent statements may not be introduced unless the witness who is alleged to have made the statement is examined about it with respect to the circumstances of time, place, and persons present. Lawson, *supra*. However, it was impossible for defense counsel to lay the necessary foundation at the time the prosecuting witnesses were on the stand since counsel did not know the report existed at that point. The trial judge erred in refusing defense counsel's request to recall the witnesses in order to lay the necessary foundation, and the appellant was denied a fair trial as a result. On retrial, should a proper foundation be laid by defense counsel, the prior inconsistent statements can be used both to impeach and as substantive evidence. *Jett v. Commonwealth*, Ky., 436 S.W.2d 788 (1969).

■ The Commonwealth argues that any error regarding exclusion of the social worker's report and testimony was harmless because the evidence excluded was merely cumulative of the victims' testimony. The Commonwealth concedes in its brief, however, that the report of the social worker relates "to the credibility of two witnesses and the weight the jury should give their testimony." The appellant's sole defense was to attack the credibility of the prosecuting witnesses, which was bolstered by their apparent ability on the stand to recall specific details about the events they alleged took place. Their statements to the social worker, which varied in several details with their testimony at trial, may have eroded this credibility. After examining the record, we conclude that there is a substantial possibility that the result would have been different if the evidence in ques-

tion had not been excluded. *Commonwealth v. McIntosh*, Ky., 646 S.W.2d 43, 45 (1983). The trial judge committed reversible error.

■ Appellant's second ground for reversal is that the trial court erred in allowing Theresa Mounce, the mother of the complaining witnesses, to testify as to what they had told her about the alleged incidents. The evidence at trial shows that the mother talked to her daughters about the complained of acts some 9 to 23 days after they allegedly occurred. The trial judge permitted the testimony under the spontaneous statement exception to the hearsay rule. We hold that the testimony of Ms. Mounce was improperly admitted to the prejudice of the appellant, and therefore we reverse on this point as well.

The spontaneous statement exception to the hearsay rule provides that an extrajudicial statement made in response to a startling occurrence or event is admissible if it is spontaneous, relates to the startling occurrence or event, and consists of data that would be competent evidence if presented as testimony by the declarant. Lawson, *supra*, § 8.60(A), at 259. The theory behind the rule is that circumstances may produce a condition of excitement which temporarily stills the capacity of reflection and produces utterances free of conscious fabrication. *Preston v. Commonwealth*, Ky., 406 S.W.2d 398, 401 (1966), *cert. denied*, 386 U.S. 920, 87 S.Ct. 886, 17 L.Ed.2d 792 (1967), *quoting* 6 *J. Wigmore on Evidence*, § 1747 at 135 (1976).

■ The key question in this case is whether the requirement of spontaneity has been met. The true test is "not when the exclamation was made, but whether under all the circumstances of the particular exclamation the speaker may be considered as speaking under the stress of nervous excitement and shock produced by the act in issue, or whether that nervous excitement has died away." *Preston*, 406 S.W.2d at 401. Circumstances that must be examined in each case are 1) lapse of time between the main act and the declaration; 2) the opportunity or likelihood of fabrication; 3) the inducement to fabrica-

tion; 4) the actual excitement of the declarant; 5) the place of the declaration; 6) the presence there of visible results of the act or occurrence to which the utterance relates; 7) whether the utterance was made in response to a question; and 8) whether the declaration was against interest or self-serving. *Souder v. Commonwealth*, Ky., 719 S.W.2d 730, 733 (1986), *quoting* Lawson, *supra*. After examining each of these circumstances in the case at bar, we conclude that the girls' statements to their mother were not spontaneous declarations. We will now discuss only the most significant circumstances as they exist in this case.

As stated above, the hearsay statements were made between 9 and 23 days after the alleged events. In explaining the delay, the Commonwealth states that the girls had limited opportunities to be alone with their mother and that they feared for their safety and that of their mother if they told. There is little in the record to support the assertion that the declarants had limited opportunities to be outside the watchful eye of the appellant. It is true that the story was told on a day when the appellant was out of town, but there is no evidence that this was the girls' first real opportunity to report the alleged abuse. *See Morgan v. Foretich*, 846 F.2d 941, 947 (4th Cir.1988). Further, the reporting occurred not because the alleged victims approached their mother, but because their mother approached them.

The Commonwealth relies on *McClure v. Commonwealth*, Ky.App., 686 S.W.2d 469 (1985), for the argument that a mere lapse of time does not, by itself, disqualify a statement as a spontaneous utterance when the declarant is a young child. Reliance on *McClure* is misplaced. First, the declarant in *McClure* was five years old; in the case at bar, the declarants were 13 years old at the time of the alleged acts. Second, the declarations in McClure were made on the same evening as the complained of acts. Indeed, in none of the cases cited in *McClure* is the lapse of time between startling event and declaration longer than three days.

We are aware that the passage of time is only one of the relevant factors to be considered. *Souder*, 719 S.W.2d at 734. However, consideration of the time lapse factor in conjunction with the other factors discussed below leads to the conclusion that these out-of-court statements were not spontaneous.

The second factor in the spontaneity equation is the opportunity or likelihood of fabrication. Clearly, the time lapse gave the declarants considerable opportunity to think about the events, to make their stories consistent, and to fabricate. Also, the declarants, at age 13, were not so young as to lack the motive and ability to fabricate. *See State v. Logue*, 372 N.W.2d 151, 158–59 (S.D.1985); and Note, *A Comprehensive Approach to Child Hearsay Statements in Sex Abuse Cases*, 83 Columbia Law Review 1745, 1751 (1983).

Another circumstance to be examined under *Souder* is the actual excitement of the declarant. Testimony established that when the girls told their mother what had taken place, they were visibly shaken and crying. Based on this, the Commonwealth argues that the girls made their statements under the stress of nervous excitement. However, the critical inquiry is whether the declarants were speaking under the stress of nervous excitement *produced by the act in issue*. *Preston*, 406 S.W.2d at 401 (emphasis added). The Commonwealth failed to show that the cause of this emotional upset was the initial shock of the alleged acts some 9 to 23 days earlier. We believe that the condition of shock was over, and that the declarants had regained their capability to reflect and distort.

Another factor is the presence at the place of the declarations of visible results of the act or occurrence in question. There were no such visible results present at the time of the declarations. *Compare McClure*, 686 S.W.2d at 469. In addition, as discussed below, there was no corroborative physical evidence of sexual abuse.

Another circumstance that must be evaluated is whether the utterance was made in response to a question. Theresa Mounce testified that she questioned the girls about the alleged incidents after finding out from another daughter about possible problems. Lapse of time coupled with narration in response to interrogation is enough to render these statements inadmissible under the spontaneous statement exception to the hearsay rule. *Souder*, 719 S.W.2d at 734.

We conclude that the circumstances under which these statements were made render them too remote and unreliable to fit within the spontaneous statement exception to the hearsay rule, and therefore the mother's testimony was impermissibly introduced against the appellant.

■ The Commonwealth contends that any error was harmless because the mother's testimony was so similar to that of the complaining witnesses as to render her testimony cumulative. We agree that there is a striking similarity in testimony, and therein lies the danger. Ms. Mounce, the first witness to be called by the Commonwealth, testified in great detail as to what acts had occurred, where they occurred, and the force and threats used by appellant in committing them. We believe that this inadmissible testimony unfairly bolstered the credibility of the complaining witnesses before they took the stand in a case that hinged on witness credibility. Furthermore, the similarity in testimony, perhaps brought about by the fact that the mother and the complaining witnesses continued to live together for two years after the statements were made and before trial, made any impeachment efforts far less effective. We refer again to the fact that the appellant was denied the opportunity to impeach the complaining witnesses with the social worker's report. This dangerous combination of circumstances, which seriously prejudiced the case against the appellant, does not exist in any of the cases cited by the Commonwealth.

After a careful examination of the record, we conclude that there is a substantial possibility the result would have been different if the hearsay testimony had been excluded. *McIntosh*, 646 S.W.2d at 45. The error in admitting the mother's testimony was not harmless.

Two additional questions were raised by the defense. The first issue concerns admissibility of a doctor's report into evidence. Ms. Mounce took her daughters to see a medical doctor about three months after the alleged incidents took place. The defense played this doctor's videotaped deposition to the jury. During the deposition, the doctor referred to reports she had made at the time of the examination. When defense counsel sought to introduce these reports at trial, the Commonwealth Attorney objected, the trial court sustained the objection, and the reports were put into the record by avowal. The gist of the doctor's testimony and reports was that there was no apparent physical evidence of sexual abuse of either of the girls.

The defense complained that the Assistant Commonwealth General attending the deposition objected on tape to the reports being admitted, but then waived his objection after the deposition was over and the videotape machine was shut off. The appellant claims that the trial court erred in refusing to hold the Commonwealth to this agreement to waive any objections to the reports, and erred in refusing to admit the reports. Since the waiver issue should not reoccur on retrial, we will not address it except to say that a Commonwealth Attorney is bound by the actions of his or her assistants. As to the admissibility of the reports, on retrial we direct the trial court to decide whether the statements should be admitted under the hearsay exception for statements made for purposes of medical diagnosis or treatment. *See Drumm v. Commonwealth*, Ky., 783 S.W.2d 380, 384–85 (1990).

Appellant's last argument is that he was entitled to a directed verdict of acquittal on the charge of first-degree sexual abuse involving one of the prosecuting witnesses, L.H., because there was no proof of sexual contact, as required by KRS 510.110. "Sexual contact" is defined as "any touching of the sexual or other intimate parts of a person not married to the actor done for the purpose of gratifying the sexual desire of either party." KRS 510.010(7). We believe that the witness's testimony on the stand was sufficient to allow the Common-wealth to survive a directed verdict on this count. *Commonwealth v. Sawhill*, Ky., 660 S.W.2d 3 (1983).

We reverse appellant's conviction and remand this case to Lincoln Circuit Court for further consideration in conformity with this opinion.

COMBS, LAMBERT, LEIBSON and VANCE, JJ., concur.

GANT and WINTERSHEIMER, JJ., concur in result only.