David JACKSON, Appellant,

v.

COMMONWEALTH of Kentucky, Appellee.

No. 2010–CA–001450–MR.

Court of Appeals of Kentucky.

July 8, 2011.

Cicely J. Lambert, Assistant Appellate
Defender, Office of the Louisville, Metro

Public Defender, Louisville, KY, for appellant.

Jack Conway, Attorney General of Kentucky, Courtney J. Hightower, Assistant Attorney General, Frankfort, KY, for appellee.

Before COMBS and LAMBERT, Judges; SHAKE,[1] Senior Judge.

## OPINION

LAMBERT, Judge:

David Jackson appeals from a judgment imposing a twelve-year sentence for a conviction of first-degree rape, first-degree wanton endangerment, and illegal possession of drug paraphernalia. After careful review, we affirm.

On September 22, 2008, S.N., the victim in this case, was in Louisville, Kentucky, enjoying a social outing with some friends. S.N. and her friends decided to go to Phoenix Hill Tavern on Bardstown Road; however, the establishment was closed. Instead, S.N. and her friends decided to stop at a bar called O'Shea's. S.N. drove her truck to O'Shea's and parked it on a side street off Bardstown Road. S.N. stayed at the bar for a short time and drank part of a beer. S.N. described the atmosphere in the courtyard of O'Shea's as friendly, with people discussing how their day had gone. S.N. recalled casually talking with a black man she later identified as the appellant, who was seated at one of the courtyard tables. After a short time, S.N. decided to leave because she had to work in the morning. She later testified that she left O'Shea's between 12:30 a.m. and 1:00 a.m. to look for her truck.

As she was trying to find her truck, S.N. became confused and ended up going back to O'Shea's to see if any of her friends could help her find it. The appellant (hereinafter Jackson) asked if she needed help looking for her truck and stated that he lived in the area and could help her. S.N. accepted Jackson's help, and they walked around for a bit searching for her truck. As Jackson and S.N. were looking down one side street, Jackson asked her if she wanted any crack cocaine, to which she responded "no." After reaching Broadway and walking down Baxter Avenue, Jackson told S.N. that he needed to put something away or drop off his backpack. Then she heard Jackson say, "hey, hey!" When S.N. turned in his direction, Jackson hit her so hard in the side of the head that she lost consciousness. When she regained consciousness, she was being shoved down in the dirt on a mattress under a viaduct.

Jackson then apparently ripped off her clothes and stood on her while he took off his clothes. Jackson got on top of S.N. and put his penis inside her vagina. According to S.N., Jackson then asked her if she liked it and said something about how all white women liked being with black men. S.N. later told police that Jackson did not wear a condom, but she thought from the sounds he made that he ejaculated. Meanwhile, while he was raping her, Jackson was beating her in the face and on the sides of her head with his fists.

At one point, S.N. heard a female voice and tried to call out for help, but Jackson covered her mouth. S.N. testified that she felt like she slipped in and out of consciousness several times due to Jackson's hitting her repeatedly in the face and head. At one point, Jackson told her to get her "white whore ass off his bed" and leave. The last time she regained con-

---

1. Senior Judge Ann O'Malley Shake sitting as Special Judge by assignment of the Chief Justice pursuant to Section 110(5)(b) of the Kentucky Constitution and Kentucky Revised Statutes (KRS) 21.580.

sciousness, she grabbed her clothes and ran screaming from the area. At that point, S.N. saw a man on the street that helped her to a nearby gas station, where she called 911.

Louisville Metro Police Officer Jim Johnson responded to the 911 call at 3:50 a.m. Officer Johnson found S.N. with a black man near a pay phone. The man told Officer Johnson that he saw S.N. walking down the street, needing help, and he helped her to a pay phone. Officer Johnson noticed that S.N.'s face looked as if it had been used as a "punching bag" and that her eyes were swollen and bloody, and she had a bloody nose. S.N. told him what happened and gave a description of the place where the attack occurred. She also gave Officer Johnson a description of the man who raped her. Officer Johnson radioed for a sex crimes detective to come to the site, and S.N. was taken to University Hospital in an ambulance.

After S.N. left in the ambulance, Officer Johnson made a quick trip to the area she had described, which was the area between the 1000 and 1100 blocks of Broadway under the viaduct. Officer Johnson had been there several times looking for people. While Officer Johnson did not locate anyone matching Jackson's description, he did observe a mattress as well as a table next to the mattress that contained crack pipes, Brillo pads, and residue. Officer Johnson then traveled to the hospital, met with his beat partner, Officer Kenneth Drury, and stayed with S.N. until Detective John Grissom arrived at approximately 5:40 a.m.

At the hospital, Officer Johnson gave Officer Drury a description of the suspect and the area where the rape allegedly occurred. Officer Drury went to the viaduct and saw Jackson sleeping on the mattress. Both Jackson and the location matched the description given by S.N. Officer Johnson and Detective Grissom then came to the area of Broadway and the viaduct. Detective Grissom spoke with Jackson, and then Officer Johnson placed him under arrest for possession of drug paraphernalia. Jackson was arrested because he had three crack pipes with fresh residue lying directly behind him and on a glass table next to him, and there was a fresh Brillo pad and cocaine residue in the vicinity.

Detective Grissom went back to the office to assemble a photo pack for S.N. to review. He obtained a photograph of Jackson taken when he was arrested, which was included in the photo pack. S.N. immediately identified Jackson as the man who raped her, shoved the photo pack away, and broke down crying.

DNA was obtained from Jackson while he was in custody. Testing performed on S.N.'s sexual assault kit revealed blood but no semen on her internal and external vaginal/genital swabs, blood but no semen on the fabric of her skirt, and no semen on her skirt. Only Jackson's DNA was found on his penile swab. A mixture of Jackson's and S.N.'s DNA was consistent with the blood on the skirt fabric.

At trial, the jury found Jackson guilty on one count of first-degree rape, one count of first-degree wanton endangerment, and of possession of drug paraphernalia. Prior to the sentencing phase of trial, Jackson entered a guilty plea, agreeing to a total sentence of twelve-years' imprisonment. Jackson timely filed a notice of appeal, and this appeal now follows.

 As his first assignment of error on appeal, Jackson argues that the trial court abused its discretion by allowing hearsay in the form of Officer Johnson's testimony recapping S.N.'s description of the incident, in violation of his federal and state constitutional rights to confronta-

tion. At trial, Jackson objected to the introduction of Officer Johnson's testimony in this regard. The trial court overruled the objection and ruled that the testimony was admissible under Kentucky Rules of Evidence (KRE) 803(1), the present sense impression exception, because S.N. was under the immediate influence of the act when she made the statements to Officer Johnson. However, when Jackson again objected, the trial court corrected itself, overruling the objection and allowing the testimony pursuant to KRE 803(2), the excited utterance exception.

■ Both the Commonwealth and Jackson correctly point out that the standard of review for a trial court's evidentiary rulings is for an abuse of discretion. *Goodyear Tire & Rubber Co. v. Thompson*, 11 S.W.3d 575, 577 (Ky.2000). An evidentiary ruling will only be overturned by this Court where "the trial judge's decision was arbitrary, unreasonable, unfair, or unsupported by sound legal principles." *Id.* at 581.

The "excited utterance" hearsay objection under KRE 803(2) is defined as "[a] statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or the condition." In *Noel v. Commonwealth*, 76 S.W.3d 923, 926 (Ky. 2002), the Kentucky Supreme Court articulated the following analysis for the excited utterance exception:

> The premise for the exception is that statements made under the stress of the excitement caused by a startling occurrence are more likely the product of that excitement and, thus, more trustworthy than statements made after the declarant has had an opportunity to reflect on events and to fabricate. *Morgan v. Foretich*, 846 F.2d 941, 946 (4th Cir. 1988); *Mounce v. Commonwealth*, 795

S.W.2d 375, 379 (Ky.1990); Robert G. Lawson, *The Kentucky Evidence Law Handbook* § 8.60, at 454–56 (3d ed. Michie 1993). For an out-of-court statement to qualify for admission under KRE 803(2), "it must appear that the declarant's condition at the time was such that the statement was spontaneous, excited, or impulsive rather than the product of reflection and deliberation." *United States v. Iron Shell*, 633 F.2d 77, 86 (8th Cir.1980) (gathering cases), *cert. denied*, 450 U.S. 1001, 101 S.Ct. 1709, 68 L.Ed.2d 203 (1981). We have identified the following factors as relevant to a determination of whether an out-of-court statement is admissible under KRE 803(2):

> (i) lapse of time between the main act and the declaration, (ii) the opportunity or likelihood of fabrication, (iii) the inducement to fabrication, (iv) the actual excitement of the declarant, (v) the place of the declaration, (vi) the presence there of visible results of the act or occurrence to which the utterance relates, (vii) whether the utterance was made in response to a question, and (viii) whether the declaration was against interest or self-serving.

*Jarvis v. Commonwealth*, 960 S.W.2d 466, 470 (Ky.1998) (quoting the pre-code case of *Souder v. Commonwealth*, 719 S.W.2d 730, 733 (Ky.1986)). We have also clarified that these factors do not pose a true-false test for admissibility but, rather, are guidelines to be considered in determining admissibility. *Jarvis, supra*, at 470 (citing the pre-code case of *Smith v. Commonwealth*, 788 S.W.2d 266, 268 (Ky.1990), *cert. denied*, 498 U.S. 852, 111 S.Ct. 146, 112 L.Ed.2d 112 (1990)). Finally, we have held that, in a close case, "the trial court's decision to admit or exclude the evidence is enti-

tled to deference." *Souder, supra,* at 733.

Jackson argues that S.N.'s statements to Officer Johnson are inadmissible hearsay because they were not made during the encounter or immediately thereafter and that too much time had passed between the alleged rape and S.N.'s statements to Officer Johnson. Further, Jackson argues that because Officer Johnson was the second person S.N. encountered after the rape, under the Kentucky Supreme Court's analysis in *Young v. Commonwealth,* 50 S.W.3d 148 (Ky.2001), her statement does not qualify as an excited utterance or a present sense impression.

In *Young,* the Court held inadmissible as a present sense impression or an excited utterance a waitress's statement to the responding officer, which was made seven minutes after she witnessed a shooting. *Id.* at 165–167. The Court noted that the statements made by the waitress were not made contemporaneously with the event she was describing or immediately thereafter, and thus did not qualify as a present sense impression. *Id.* at 166. Furthermore, the waitress's statement was not an excited utterance because the officer deliberately interviewed her because she was not as excited as the other witnesses, and her statement about the killer was not spontaneous, but instead was in response to direct questioning from police. *Id.* at 167.

The Commonwealth counters that when the *Noel* factors are applied to the case at bar, S.N.'s statements to Officer Johnson qualify as excited utterances. The Commonwealth argues that the lapse of time between the main act and the declaration to Officer Johnson was short. It argues that S.N. testified that she began looking for her truck at approximately 12:30 a.m. and that Officer Johnson was called out to the Chevron Station at 3:50 a.m., and thus the rape took place sometime between 12:30 a.m. and 3:50 a.m. It is unclear how long the rape lasted, because S.N. was beaten unconscious during the attack. However, at her first opportunity, S.N. fled the scene, contacted authorities, and immediately gave her description of the accident.

Further, the Commonwealth contends that S.N. had no opportunity to fabricate her statements because she immediately ran for help and gave a statement to the police, which was supported by the physical evidence of an assault to her head and face. The Commonwealth also points out that S.N. was extremely upset and was having a hard time getting any words out or forming complete sentences when she gave her statement to Officer Johnson. Therefore, it contends that her demeanor was very excited and upset, mirroring that of an excited utterance. The Commonwealth also argues that the declaration was made at the Chevron Station, which was very close to where the rape allegedly occurred.

Finally, the Commonwealth argues that S.N.'s face looked as if it had been used as a punching bag, which was visible evidence supporting her statements to Officer Johnson. Her statements were not self-serving since she had no reason to fabricate that she had been raped or brutally beaten. Taking all these factors into consideration, the Commonwealth argues, S.N.'s statements to Officer Johnson qualify as excited utterances pursuant to KRE 803(2).

After careful review of the applicable caselaw above and the factors as set forth by the Commonwealth, we agree that the trial court did not abuse its discretion in admitting Officer Johnson's testimony as admissible hearsay under KRE 803(2). S.N.'s statements were given immediately after the attack and the physical evidence supported the details she had provided to

the police. Further, the statements were given in close proximity to where the attack occurred, and there was little to no time for S.N. to fabricate any story. Finally, S.N. was clearly excited and upset when she gave her statement to Officer Johnson, perhaps the most convincing argument that her statements were in fact excited utterances. Accordingly, we find no error in the trial court's evidentiary rulings admitting Officer Johnson's testimony about S.N.'s statement as acceptable hearsay pursuant to KRE 803(2).

■ Jackson next argues that he was improperly arrested without a warrant and that his state and federal constitutional rights against search and seizure were denied. He also argues that his illegal arrest tainted the victim's identification of him as the perpetrator. Jackson concedes that this argument was not preserved for appellate review, but urges this Court to review for palpable error under Kentucky Rules of Criminal Procedure (RCr) 10.26. In *Martin v. Commonwealth,* 207 S.W.3d 1, 3–4 (Ky.2006), the Kentucky Supreme Court further explained what is required in conducting review under RCr 10.26. Under this rule, an error is reversible only if a manifest injustice has resulted from the error. That means that if, upon consideration of the whole case, a substantial possibility does not exist that the result would have been different, the error will be deemed nonprejudicial. *Graves v. Commonwealth,* 17 S.W.3d 858, 864 (Ky. 2000) (internal quotation omitted). The Commonwealth strongly urges us not to conduct such review under RCr 10.26, because Jackson did not file a motion to suppress S.N.'s identification of him as the perpetrator.

Under RCr 9.78, when a defendant moves to suppress a witness identification, the trial court must conduct an evidentiary hearing and enter findings resolving the essential issues of fact. If supported by substantial evidence, the factual findings of the court are conclusive. According to the Commonwealth, review of this issue by this Court to determine if there was palpable error would undermine the fact-finding by the trial court set out in RCr 9.78. Further, the Commonwealth argues that proceeding to a palpable error review without a suppression motion or evidentiary hearing would also undermine the deference given to factual findings made by the trial court.

We agree with the Commonwealth that because no such motion to suppress Jackson's identification was made, the trial court necessarily did not conduct the requisite evidentiary hearing or enter any findings of fact. Accordingly, there is nothing that we can review for palpable error. However, even were we to review Jackson's claims for palpable error, the record indicates that Jackson's arrest was proper and that no manifest injustice occurred.

■ Jackson was arrested without a warrant for illegal possession of drug paraphernalia, a misdemeanor. A warrantless arrest of an individual in a public place for a felony, or a misdemeanor committed in the officer's presence, is consistent with the Fourth Amendment if the arrest is supported by probable cause. *Maryland v. Pringle,* 540 U.S. 366, 124 S.Ct. 795, 157 L.Ed.2d 769 (2003). *See also* KRS 431.005(1)(d). Jackson argues that the facts herein do not support the commission of a misdemeanor in Officer Johnson's presence and, thus, that there was not probable cause for his arrest. "To determine whether an officer had probable cause to make an arrest, a court must examine the events leading up to the arrest, and then decide 'whether these historical facts, viewed from the standpoint of an objectively reasonable police officer,

amount to' probable cause." *Maryland v. Pringle*, 540 U.S. 366, 124 S.Ct. 795 at 797, quoting *Ornelas v. United States*, 517 U.S. 690, 696, 116 S.Ct. 1657, 1661–1662, 134 L.Ed.2d 911 (1996).

In support of his argument that the facts do not support the commission of a misdemeanor in Officer Johnson's presence, Jackson makes an attenuated argument that the arresting officers did not see him and the drugs at the same time and, thus, that the officers did not observe that the drugs were within his control. However, a careful review of the testimony at trial indicates that Officer Johnson specifically testified that Jackson was arrested for possession of drug paraphernalia because there were three crack pipes lying directly behind him on the rocks of the viaduct, and on the glass table there was a fresh Brillo pad and cocaine residue. Officer Johnson further testified that Jackson was lying on the mattress and the paraphernalia was directly behind and beside him. The three pipes had fresh residue on them. We agree with the Commonwealth that these facts provided Officer Johnson with probable cause to arrest Jackson for possession of drug paraphernalia. Accordingly, because Jackson's arrest was not illegal, the victim's identification was not tainted, and there was no possibility that the result of his trial would have been different.

■ Finally, Jackson argues that he was denied his right to a unanimous jury verdict because the instruction on possession of drug paraphernalia permitted the jury to convict him on a theory not supported by the evidence. Again, Jackson concedes that this issue is not preserved for our review and urges us to consider his arguments under RCr 10.26.

We initially note that during the discussion on jury instructions, the trial court specifically inquired as to whether Jackson had any problems with the possession instruction, and Jackson indicated that he had no problems with the instructions. However, we will proceed with a palpable error review.

The jury in this case was provided with the following instruction:

You will find the defendant, DAVID JACKSON, guilty of Illegal Possession of Drug Paraphernalia under this Instruction if, and only if, you believe from the evidence beyond a reasonable doubt, all of the following:

A: That in Jefferson County on or about the 23rd day of September, 2008, the defendant possessed crack pipes and/or foil;

AND

B: That he did so with intent to smoke crack cocaine.

Jackson specifically takes issue with the language "and/or foil," arguing that language allowed the jury to convict on a theory unsupported by the evidence, since there was no evidence of foil present when Jackson was arrested.

In *In re Winship*, 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970), the U.S. Supreme Court made clear that the state is required to prove beyond a reasonable doubt every fact necessary to constitute a crime with which a defendant is charged. In *Burnett v. Commonwealth*, 31 S.W.3d 878 (Ky.2000), the Kentucky Supreme Court concluded that a theory of guilt set forth in the instructions was not supported by the evidence and the appellant was denied a unanimous verdict. The court further held that the denial of a unanimous verdict, where the error was properly preserved, was not subject to a harmless error analysis. *Id.* at 883.

However, in *Travis v. Commonwealth*, 327 S.W.3d 456, 463 (Ky.2010), the Kentucky Supreme Court stepped back from

their position in *Burnett, supra,* concluding that if there was no reasonable possibility that the jury actually relied on the erroneous theory, in particular, where there was no evidence of the theory that could mislead the jury, then there was no unanimity problem. The court held that even if there was an error in the instructions, namely the inclusion of surplus language, the error was simply harmless because there is no reason to think the jury was misled. *Id.*

Regarding the instant case, in KRS 218A.500(2), the legislature set out the following:

It is unlawful for any person to use, or to possess with intent to use, drug paraphernalia for the purpose of planting, propagating, cultivating, growing, harvesting, manufacturing, compounding, converting, producing, processing, preparing, testing, analyzing, packing, repacking, storing, containing, concealing, injecting, ingesting, inhaling, or otherwise introducing into the human body a controlled substance in violation of this chapter.

The evidence established, and the jury concluded, that Jackson was guilty of possession of drug paraphernalia because three crack pipes with fresh residue were lying right behind him and a fresh Brillo pad and residue were found on a table next to him. The language of the jury instruction in question did not contain alternate theories of guilt and the inclusion of the language "and/or foil" in the instruction was not an alternative theory of guilt. The jury concluded that the crack pipe was paraphernalia. Finally, because there was no evidence that Jackson possessed any foil, the language was merely superfluous and any error was harmless based upon the Kentucky Supreme Court's holding in *Travis.* We find no palpable error in the inclusion of this jury instruction.

Discerning no reversible error on appeal, we affirm Jackson's conviction in its entirety.

ALL CONCUR.